YAMAHA MOTOR CORPORATION, U.S.A., Appellant,

v.

MOTOR VEHICLE DIVISION, TEXAS DEPARTMENT OF TRANSPORTATION and Richard E. Trible, Inc. d/b/a North Dallas Yamaha–Suzuki–BMW, Appellees.

No. 3–92–581–CV.

Court of Appeals of Texas, Austin.

Aug. 11, 1993.

Rehearing Overruled Sept. 15, 1993.

Walter G. Pettey, III, Hughes & Luce, L.L.P., Dallas, for appellant.

Dan Morales, Atty. Gen., Ms. Elizabeth R.B. Sterling, Asst. Atty. Gen., Austin, for Texas Dept. of Transp., Division of Motor Vehicles.

Thomas L. Butler, Butler, Todd & Crane, Austin, for Richard E. Trible, Inc. d/b/a North Dallas Yamaha–Suzuki–BMW.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

JONES, Justice.

Bypassing the district court, Yamaha Motor Corporation, U.S.A., appellant, seeks judicial review by "direct appeal" of a final order issued by appellee Texas Motor Vehicle Commission (the "Commission"). *See* Texas Motor Vehicle Commission Code, Tex. Rev.Civ.Stat.Ann. art. 4413(36) (West 1976 & Supp.1993) (the "Code").[1] By its order, the Commission required Yamaha to repurchase parts in connection with the termination of a Yamaha franchise held by appellee Richard E. Trible, Inc. d/b/a North Dallas Yamaha–Suzuki–BMW ("Trible, Inc.").

In eight points of error, Yamaha complains: (1) that the Commission erred in retroactively applying section 5.02(16)(B) of the Code; (2) that there was no substantial evidence in the record to support the Commission's order; and (3) that the Commission acted arbitrarily, abused its discretion, and exceeded its statutory authority in issuing its order. We will affirm the order of the Commission.

### FACTUAL AND PROCEDURAL BACKGROUND

Trible, Inc. was an authorized Yamaha dealer from July 1984 until it voluntarily terminated its franchise in August 1990. During this time, two dealer agreements were executed. The first agreement, executed in 1984, granted Yamaha the option, but not the obligation, to repurchase "all new, unused and undamaged resalable parts, purchased from Yamaha" on termination of the

---

1. Section 7.01(a) of the Code provides that any party to a Commission proceeding which is affected by a final order of the Commission is entitled to judicial review of the order, under the substantial-evidence rule, in a district court of Travis County "or in the Court of Appeals for the Third Court of Appeals District." This provision grants this Court original jurisdiction in a matter traditionally brought in the trial court. *See* Tex. Const. art. V, § 6 (courts of appeals to have "such other jurisdiction, original or appellate, as may be prescribed by law").

 Unless otherwise noted, all statutory references in this opinion will be to the Code.

franchise. In 1987, while this agreement was in force, the Code was amended to include section 5.02(16)(B), a provision *requiring* a manufacturer, distributor, or representative (e.g., Yamaha) to repurchase

each new, unused, undamaged, and unsold part or accessory if the part or accessory is in the current parts catalogue and is still in the original, resalable merchandising package and in unbroken lots, except that in the case of sheet metal, a comparable substitute for the original package may be used, and if the part or accessory was purchased by the dealer either directly from the manufacturer or distributor or from an outgoing authorized dealer as a part of the dealer's initial inventory.

Code § 5.02(16)(B). In 1988 Trible, Inc. and Yamaha executed a new dealer agreement, which contained a repurchase provision similar to that contained in the 1984 dealer agreement.

Following Trible, Inc.'s termination of its franchise in 1990, Yamaha repurchased only those parts from Trible, Inc.'s inventory that had been originally purchased *after* the execution of the 1988 dealer agreement. Yamaha refused to repurchase any parts purchased before the execution of the 1988 dealer agreement.

Trible, Inc. filed a complaint with the Commission requesting that the Commission order Yamaha to repurchase all qualifying parts purchased before the execution of the 1988 dealer agreement. After a hearing, the Commission ordered Yamaha to (1) repurchase Trible, Inc.'s remaining inventory of qualifying parts, (2) take responsibility for loading and shipping the inventory, and (3) pay Trible, Inc. a total sum of $189,360.77 for the inventory, attorney's fees, costs, and interest. Yamaha timely filed a motion for rehearing, which was overruled by operation of law. Yamaha then initiated the present cause in this Court pursuant to section 7.01(a) of the Code.

## RETROACTIVE APPLICATION

■ In points of error five through seven, Yamaha complains that the Commission erred in retroactively applying section 5.02(16)(B), the repurchase provision contained in the 1987 amendment to the Code, to the 1984 dealer agreement. Yamaha contends that the 1984 dealer agreement controlled until the 1988 dealer agreement was executed and that section 5.02(16)(B) is inapplicable to the 1984 dealer agreement.

■ Yamaha does not assert that section 5.02(16)(B) is inapplicable to the 1988 dealer agreement. Indeed, such a claim would be without merit. "The laws existing at the time a contract is made becomes [sic] a part of the contract and governs the transaction." *Wessely Energy Corp. v. Jennings,* 736 S.W.2d 624, 626 (Tex.1987). Further, parties to a contract may not by agreement control or limit the provisions of a statute. *McFarland v. Haby,* 589 S.W.2d 521, 524 (Tex.Civ. App.—Austin 1979, writ ref'd n.r.e.); *see also Williams v. Williams,* 569 S.W.2d 867, 870 (Tex.1978); *Housing Auth. v. Lira,* 282 S.W.2d 746, 748 (Tex.Civ.App.—El Paso 1955, writ ref'd n.r.e.). Because section 5.02(16)(B) was in existence at the time the 1988 dealer agreement was executed, that statutory provision became part of the agreement.

Acknowledging its obligations under the 1988 dealer agreement, Yamaha contends that section 5.02(16)(B) applies *only* to parts purchased after the 1988 dealer agreement was executed. We disagree. Section 9.3 of the 1988 dealer agreement provides: "This Agreement and its Addendum(s) *supersede and terminate any and all agreements* or contracts written or oral, entered into between Yamaha and [Trible, Inc.] as of the effective date of this Agreement with reference to all matters covered by this Agreement." (Emphasis added.) Thus, the 1988 dealer agreement completely replaced the 1984 dealer agreement. Accordingly, when Trible, Inc. terminated its franchise in 1990, the 1988 dealer agreement controlled *all* of the parties' existing responsibilities as to their relationship, including those originating from the time the franchise was granted in July 1984. Because the repurchase obligation imposed by section 5.02(16)(B) was part of the 1988 dealer agreement, applying the requirements of this section to that agreement does not result in retroactive ap-

plication. Accordingly, we overrule points of error five through seven.

## SUBSTANTIAL–EVIDENCE REVIEW

In points of error one and two, Yamaha complains that no substantial evidence exists to support the Commission's order awarding Trible, Inc. $189,360.77. More specifically, Yamaha complains that no substantial evidence exists to demonstrate that the inventory the Commission ordered Yamaha to repurchase consisted of qualifying parts as described under section 5.02(16)(B) of the Code.

■ The applicable standard for reviewing the sufficiency of the evidence to support the Commission's order is the substantial-evidence rule. *See* Code, § 7.01(a). This Court extensively discussed the substantial-evidence test in *Lone Star Salt Water Disposal Co. v. Railroad Commission*, 800 S.W.2d 924 (Tex.App.—Austin 1990, no writ):

> To determine whether an agency's decision is supported by substantial evidence ... we must determine whether, in considering the record upon which the decision is based, the evidence as a whole is such that reasonable minds could have reached the conclusion which the Commission must have reached in order to justify its action. In determining whether there is substantial evidence to support the order, the reviewing court may not substitute its judgment for the Commission's, and must consider only the record upon which the decision is based. The evidence in the agency record may actually preponderate against the Commission's decision, but still amount to substantial evidence supporting it. The burden is on the complaining party to demonstrate an absence of substantial evidence.
>
> Final orders of the Commission are presumed to be valid. Where the evidence in the record before an agency will support either an affirmative or a negative finding, the agency order must be upheld. Any conflict in the evidence must be resolved in favor of the agency's decision.

*Id.* at 928 (citations omitted); *see also Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 452–53 (Tex.1984).

Focusing on the requirements for repurchase listed in section 5.02(16)(B) of the Code, Yamaha argues there was no substantial evidence to demonstrate (1) that the parts the Commission ordered Yamaha to repurchase were originally purchased by Trible, Inc. from qualifying sources, or (2) that such parts were properly packaged for repurchase.

■ First, Yamaha contends that Trible, Inc. failed to demonstrate that all parts the Commission identified for repurchase were in fact purchased from qualifying sources. Section 5.02(16)(B) requires a manufacturer or distributor to repurchase from the dealer any "part or accessory [that] was purchased by the dealer either directly from the manufacturer or distributor or from an outgoing authorized dealer as part of the dealer's initial inventory." It is undisputed that Trible, Inc.'s inventory derived from three sources: the initial inventory purchased from the prior dealer, Yamaha, and other Yamaha dealers. Yamaha does not dispute that it is required to repurchase parts derived from either the prior dealer or Yamaha itself. Rather, Yamaha focuses on the fact that some parts in Trible, Inc.'s inventory had been purchased from other "non-qualifying" dealers. Yamaha contends that Trible, Inc. failed to show what percentage of parts came from which source and, as a result, failed to demonstrate that all parts at issue qualified for repurchase. We disagree.

Richard Trible, president of Trible, Inc., testified that parts were purchased from other dealers only when a part was needed immediately or was not available from the factory. As to the disposition of such parts, Mr. Trible further testified that "we would ... put them in stock or sell them right then." From this testimony, the Commission could reasonably have inferred, first, that any parts needed immediately were also sold to customers immediately. Accordingly, such parts would not have been part of Trible, Inc.'s inventory upon termination of the franchise. Second, the Commission could reasonably have inferred that any parts that were not available from the factory were also not listed in the current parts catalogue,

another requirement for repurchase under the statute, and were excluded from the repurchase order on that basis. In other words, the Commission could have reasonably concluded, based on Mr. Trible's testimony, that no part purchased from "other dealers" was included under its repurchase order.

Second, with respect to the packaging of the parts, Yamaha contends that Trible, Inc. failed to demonstrate that all parts identified for repurchase were properly packaged. Section 5.02(16)(B) requires a manufacturer or distributor to repurchase "each new, unused, undamaged, and unsold part or accessory if the part or accessory is in the current parts catalogue and is still in the original, resalable merchandising package and in unbroken lots." Yamaha contends that all parts subject to the Commission's repurchase order were not in the "original, resalable merchandising package." Rather, Yamaha contends that some parts were packaged in non-qualifying resealable plastic bags and others in newspaper.

■■■ With respect to those parts packaged in resealable plastic bags, appellees contend that Yamaha has waived any complaint as to proper packaging by consenting to accept parts packaged in this manner. Waiver occurs when there is an "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987). Mr. Trible testified that he consulted with Russell Jura, legal counsel for Yamaha, and that Mr. Jura indicated that Yamaha would accept, for repurchase, parts packaged in resealable plastic bags. Yamaha contends that the agreement between the two men applied only to those parts purchased after execution of the 1988 dealer agreement. This argument lacks merit. Jura's testimony reflects that he consented to the use of resealable plastic bags as an alternate form of packaging for certain types of parts Yamaha was legally obligated to repurchase. We have

concluded above that the 1988 dealer agreement controlled Yamaha's repurchase obligations on termination of the franchise. Yamaha offers no explanation why some parts it was legally obligated to purchase would be acceptable in alternate packaging, yet others would not. We conclude that the record contains substantial evidence that Yamaha expressly and intentionally relinquished a known right by consenting to accept alternate packaging for parts it was legally obligated to repurchase, without regard to when such parts had originally been purchased. Accordingly, the record contains substantial evidence that Yamaha waived any right to complain of Trible, Inc.'s use of resealable plastic bags as an alternate method of packaging.[2]

■ With respect to the parts packaged in newspaper, the Commission concluded that this method was an acceptable form of packaging. Section 5.02(16)(B) allows an exception to original packaging in the case of sheet metal: "except that in the case of sheet metal, a comparable substitute for the original package may be used." The only part identified by Yamaha as wrapped in newspaper was exhibit thirteen, a fender. Mr. Trible testified that sheet metal, such as the fender, usually is received from the manufacturer or distributor in brown paper wrapping and that he would then rewrap the parts in newspaper upon receipt. Based on this testimony, the Commission was entitled to conclude that newspaper constitutes a comparable substitute for brown paper wrapping and that packaging in newspaper was an acceptable form of packaging under section 5.02(16)(B) for sheet metal parts.

We hold that the Commission was entitled to conclude, based on the substantial evidence presented, that Yamaha was obligated to repurchase all parts properly packaged in resealable plastic bags or newspaper. Accordingly, we overrule points of error one and two.

2. Yamaha asserts that "[w]aiver does not occur unless the party asserting waiver has been misled to his prejudice, and Trible, Inc. demonstrated no such prejudice." This rule applies only where waiver is *implied.* *See Vessels v. Anschutz Corp.,* 823 S.W.2d 762, 765 (Tex.App.—Texarkana 1992, writ denied). Because Yamaha *expressly* waived its right to complain of the use of resealable plastic bags, we need not consider whether Trible, Inc. was prejudiced.

## COMMISSION'S ACTIONS

In points of error three, four, and eight, Yamaha contends that the Commission abused its discretion and exceeded its statutory authority in issuing its order. Specifically, in points of error three and four, Yamaha complains that, because there was no substantial evidence to support the Commission's order, the issuance of such order is "arbitrary, capricious, an abuse of discretion and beyond the statutory authority of the Commission." We have concluded above that substantial evidence supports the Commission's order. Accordingly, we overrule points of error three and four.

■ Citing this Court's opinion in *Kawasaki Motors Corp. U.S.A. v. Texas Motor Vehicle Commission,* 855 S.W.2d 792 (Tex. App.—Austin 1993 no writ), Yamaha contends in point of error eight that the Commission exceeded its statutory authority in issuing its order because the Code does not grant the Commission the authority to adjudicate claims between franchisors and franchisees or to order payment by a franchisor to a franchisee. Appellees respond that Yamaha has waived its right to seek judicial review on this issue because Yamaha did not assert any such argument in its motion for rehearing before the Commission.

Yamaha has a *statutory right* to judicial review pursuant to section 7.01(a) of the Code. In addition, the Administrative Procedure and Texas Register Act, Tex.Rev.Civ. Stat.Ann. art. 6252–13a (West Supp.1993) ("APTRA"), imposes procedural requirements for exercising this right. In order to utilize statutory judicial review, Yamaha must have complied with the procedural requirements imposed, including the requirement that a party exhaust all administrative remedies by filing a motion for rehearing that sufficiently identifies all claimed errors. *See* APTRA, §§ 16(e), 19(a); *Suburban Util. Corp. v. Public Util. Comm'n,* 652 S.W.2d 358, 365 (Tex.1983). Yamaha could have presented the complaint raised in point of error eight in its motion for rehearing before the Commission, obtained a ruling, and then requested judicial review of the Commission's action either in a district court of Travis County or in this Court. Yamaha, however, concedes that it failed to assert this complaint in its motion for rehearing.

■ Yamaha argues, however, that although a party must generally exhaust administrative remedies before seeking judicial review, an exception exists where the agency action is unconstitutional, beyond its jurisdiction, or clearly illegal. *See Texas Air Control Bd. v. Travis County,* 502 S.W.2d 213, 216 (Tex.Civ.App.—Austin 1973, no writ). We recognize that in certain limited circumstances, e.g., when an agency acts outside its constitutional or statutory authority, a party may challenge the agency's action independent of the procedural requirements imposed by APTRA in a statutory suit for judicial review. *See City of Sherman v. Public Util. Comm'n,* 643 S.W.2d 681, 683 (Tex.1983); *Westheimer Indep. Sch. Dist. v. Brockette,* 567 S.W.2d 780, 785 (Tex.1978). This exception, however, allows a party to challenge the agency's action *prior* to the rendition of a final order. *Texas Air Control Bd.,* 502 S.W.2d at 216–17. In the present case, Yamaha did not raise this challenge either before the rendition of the Commission's final order or thereafter. Rather, Yamaha has raised this challenge for the first time in this Court in its statutory suit for judicial review.

■ Yamaha in essence contends that because it was entitled to challenge the Commission's actions before rendition of final judgment without complying with APTRA's procedural requirements for judicial review, it is likewise entitled to challenge the Commission's action *after rendition of final judgment* without complying with such requirements. We find these circumstances distinguishable. In the present case, Yamaha is, in fact, challenging the Commission's actions after rendition of the final judgment, and APTRA provides the procedure by which a party is entitled to bring a suit for judicial review after rendition of a final judgment. Because Yamaha has failed to follow this procedure, any right it may have to challenge the agency's actions must consist of an independent right to challenge agency action out-

side the confines of a statutory suit for judicial review.[3]

We do not decide whether Yamaha does, in fact, have an independent right to challenge agency action when it has failed to preserve its statutory right to judicial review. Rather, we simply decide that if Yamaha has any right to challenge the Commission's action other than through a statutory right to judicial review, that right would be an independent right to challenge such action, which falls outside the confines of a statutory suit for judicial review. *Cf. Bank of Woodson v. Stewart*, 632 S.W.2d 950, 956–57 (Tex.App.—Austin), *dism'd as moot*, 641 S.W.2d 230 (Tex.1982) (where party asserts inherent right to judicial review, this claim constitutes independent challenge falling outside statutory right to judicial review). Assuming that Yamaha's complaint under point of error eight would entitle it to an independent cause of action against the agency, the exhaustion-of-administrative-remedies requirement, although applicable in a statutory suit for judicial review, is inapplicable in this context. Accordingly, even though Yamaha failed to preserve its *statutory right* for judicial review as to point of error eight, it may retain an *independent right* to challenge the Commission's action through an original proceeding.

■■■■■■ Although Yamaha may still have this independent right to challenge the Commission's action complained of in point of error eight, a reviewing court obviously must have jurisdiction to consider such a complaint. District courts are courts of general jurisdiction. *See* Tex. Const. art. V, § 8. Accordingly, they have original jurisdiction to review agency action that is in excess of an agency's constitutional or statutory powers. *See City of Sherman*, 643 S.W.2d at 683; *Brockette*, 567 S.W.2d at 785. In other words, district courts, through their general jurisdiction, are authorized to review agency

actions when a party challenges such action in a proceeding that falls outside the confines of a statutory suit for judicial review. *Cf. Spring Indep. Sch. Dist. v. Dillon*, 683 S.W.2d 832, 836 n. 5 (Tex.App.—Austin 1984, no writ) (district court has original jurisdiction to review agency action where party asserts inherent right to judicial review that falls outside confines of statutory suit for judicial review). As an appellate court, however, this Court is not vested with general jurisdiction. *See* Tex. Const. art. V, § 6. This Court has appellate jurisdiction to review the judgments of district and county courts, but our jurisdiction to consider this original suit for judicial review of the Commission's order is limited to the authority expressly granted by the Code. Because Yamaha failed to preserve its statutory right to judicial review, however, it may not raise the argument contained in point of error eight through a statutory suit for judicial review. Although we would have jurisdiction to consider an appeal from the district court's judgment on such an issue, we have no jurisdiction to consider Yamaha's complaint in an original proceeding such as the present one. Having no jurisdiction to consider Yamaha's eighth point of error, we need not reach the merits of this point.

## CONCLUSION

Based on our disposition of Yamaha's points of error, we affirm the order of the Commission.

---

3. We note that a party adversely affected by an agency decision may have an inherent procedural-due-process right to seek judicial review which exists independent of any statutory right to seek judicial review. *See Southwest Airlines Co. v. Texas High–Speed Rail Auth.*, No. 3–92–151–CV, slip op. at 4–5, 1993 WL 194086 (Tex.App.—Austin June 9, 1993, n.w.h.); *Pickell v. Brooks*, 846 S.W.2d 421, 426 (Tex.App.—Austin 1992, writ denied). We do not interpret Yamaha's complaint under point of error eight as claiming an inherent procedural-due-process right to judicial review. Even if Yamaha is attempting to assert such a claim, however, our result in this case would not change, because this inherent procedural-due-process right to judicial review is an independent challenge to agency action that falls outside the confines of a statutory suit for judicial review.