TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00221-CV







Friends of Canyon Lake, Inc., Appellant


v.


Guadalupe-Blanco River Authority; The Attorney General of Texas; Canyon Regional
Water Authority; The Texas Natural Resource Conservation Commission;

Bexar Metropolitan Water District; San Antonio Water System;

City of Boerne; and City of Fair Oaks Ranch, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. GN104169, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING




 This is an appeal of a declaratory judgment in a bond validation action authorizing
the Guadalupe-Blanco River Authority ("the Authority") to issue bonds relating to a water project
that had been approved by the Texas Natural Resource Conservation Commission ("the TNRCC"
or "the Commission"). (1) Appellant Friends of Canyon Lake, Inc. ("FOCL") appeals the district
court's order granting the Authority's and the Commission's pleas to the jurisdiction and the
judgment failing to find that the Authority violated the notice requirements of the Open Meetings
Act, see Tex. Gov't Code Ann. § 551.041 (West 1994), validating the TNRCC approval, and
authorizing the issuance of the bonds. In two issues, FOCL contends the district court erred because:
(1) the evidence establishes as a matter of law that at its August 20, 1997 meeting the Authority
violated the Open Meetings Act by taking final action on a matter not reflected in the notice of the
meeting; and (2) the pleas to the jurisdiction were improperly granted because FOCL raised claims
that were exempt from the exhaustion doctrine and were independent of FOCL's claims under the
Administrative Procedure Act. We will affirm the district court's judgment.




BACKGROUND


 The Authority is a ten-county conservation and reclamation district and agency of the
State of Texas. See Tex. Const. art. XVI, § 59. On August 29, 1997, the general manager of the
Authority, William E. West, filed an application ("the Application") with the TNRCC requesting
authorization to meet increasing demands for surface water in central Texas communities. The
Application sought to: (1) increase the annual take from Canyon Reservoir from a maximum of
62,900 acre feet of water to 120,000 acre feet, (2) increase the maximum allowable over five
consecutive years from 250,000 acre feet to 450,000 acre feet, and (3) sell the water outside of the
Authority's ten county area. On August 15, 1999, shortly after the Application had been declared
administratively complete, notice of the Application was published in the San Antonio Express-News
and the New Braunfels Herald-Zeitung, newspapers of general circulation in the area surrounding
Canyon Reservoir. The TNRCC approved the Application and on August 9, 2001, issued an
Amendment to the Authority's Certificate of Adjudication No. 18-2074 ("the Amendment"). 

 Shortly thereafter, appellant was incorporated and immediately filed three lawsuits
contesting the TNRCC's amendment decision. (2)
 Meanwhile, for the purpose of undertaking the water
project, the Authority approved a resolution to issue $75,000,000 in contract revenue bonds. 
Issuance of the bonds was not approved by the Attorney General, however, because their security
was jeopardized by the pending lawsuits. Therefore, the Authority brought this declaratory judgment
action to resolve the controversy surrounding the issuance of the bonds. See Tex. Gov't Code Ann.
§ 1205.021 (West 2000) ("Expedited Declaratory Judgment Act"). 

 FOCL and the other appellees, including the TNRCC, intervened in the Authority's
suit. FOCL's three suits were consolidated with the Authority's expedited declaratory judgment
action. On March 5, 2002, the district court heard arguments in a pretrial hearing on pleas to the
jurisdiction filed by both the Authority and the TNRCC and subsequently dismissed all but one of
FOCL's challenges to the TNRCC's decision to issue the Amendment. The district court determined
that it lacked subject-matter jurisdiction of the complaints because FOCL had failed to exhaust its
administrative remedies. Neither FOCL nor any individual member of FOCL timely requested a
contested case hearing on the Application. (3) According to the district court, FOCL was not a "party"
to the TNRCC proceeding and had no right to make a direct attack on the TNRCC's issuance of the
Amendment. See Tex. Gov't Code Ann. § 2001.003(4) (West 2000); see also City of Port Arthur
v. Southwestern Bell Tel. Co., 13 S.W.3d 841, 844 (Tex. App.--Austin 2000, no pet.).

 However, the district court did not dismiss FOCL's Open Meetings Act challenge,
and on March 18, 2002, it conducted a trial on the Authority's request for relief under the Expedited
Declaratory Judgment Act and FOCL's Open Meetings Act claims. In its final judgment, the district
court ruled that the Authority had shown itself entitled to the relief sought and FOCL had failed to
demonstrate any violation by the Authority of the Open Meetings Act. In its findings of fact and
conclusions of law, the district court determined, among other things, that: (1) the actions relating
to the Application that were taken by the Authority at its October 16, 1996 and August 20, 1997
board meetings were a "logical consequence" of the meetings and were, therefore, in compliance
with the Open Meetings Act; (2) neither FOCL nor any of its members requested a contested case
hearing on the Application; (3) FOCL's Open Meetings Act claims were moot and impermissible
collateral attacks on the Amendment; (4) and (4) the Application was, in any case, approved and ratified
by the Authority's Board on June 13, 2001, in a meeting that complied with the Open Meetings Act. 
FOCL's challenges to the Amendment were thus without merit, and the Amendment constituted a
valid and binding action of the TNRCC. The district court's judgment authorized the Authority to
issue the bonds necessary for its water project. This appeal followed.




DISCUSSION


 On appeal, FOCL presents its Open Meetings Act issue first and the plea to the
jurisdiction issue second. Because some arguments relevant to the first issue are addressed in our
discussion of the second, and also for the sake of convenience, we will first address FOCL's
contention that the district court erred by dismissing its claims on appellees' pleas to the jurisdiction. 


Plea to the Jurisdiction

 A plea to the jurisdiction challenges the district court's authority to determine the
subject matter of the cause of action. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.
2000). Subject-matter jurisdiction raises a question of law, which we review de novo. Mayhew v.
Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). The burden is on the non-movant to plead
facts sufficient to show that the district court has subject-matter jurisdiction. Texas Ass'n of Bus.
v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). Of course, a trial court must not force
the non-movant to prove its entire case before trial. See Bland, 34 S.W.3d at 555. But a trial court
does have the discretion to determine subject-matter jurisdiction in a preliminary hearing or to await
a more detailed development of the merits of the case. See id. at 554. Here, the district court held
a preliminary hearing at which evidence was considered. It determined that FOCL's challenges to
the Amendment, except its Open Meetings Act claims, failed to confer subject-matter jurisdiction
because it had not exhausted its administrative remedies. We will uphold the decision of the district
court.

 It is well settled that a party must exhaust its administrative remedies before seeking
judicial review of an agency decision. See Tex. Gov't Code Ann. § 2001.171 (West 2000); see also
Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan, 51 S.W.3d 293, 294-95 (Tex. 2001). This Court,
applying the rule announced in Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71 (Tex. 2000), has held
that the requirement of seeking a remedy with the administrative agency is jurisdictional rather than
a matter going solely to a plaintiff's right to relief. See Hill v. Board of Trs., Ret. Sys., 40 S.W.3d
676, 678 (Tex. App.--Austin 2001, no pet.) (Concluding that kind of case district court may hear
is defined and restricted to "those in which the plaintiff has exhausted its administrative remedies
and completed the administrative process."). The Texas Legislature and the TNRCC have established
a process for affected persons to participate in certain agency decisions, including by requesting and
participating in contested case hearings. See Tex. Gov't Code Ann. § 2003.047(b); see also 30 Tex.
Admin. Code §§ 55.21-.31 (2001) (Natural Resource Conservation Commission, Request for
Contested Case Hearings). The district court granted the pleas to the jurisdiction because FOCL
admittedly failed to avail itself of this process.

 FOCL, however, contests the applicability of the exhaustion doctrine to its case. It
contends that the Authority places FOCL in an impossible situation because neither it, nor any of its
members, was ever provided with notice of the Application. According to FOCL:


The trial court's dismissal of [FOCL's] claims for failure to request a contested case
hearing begs the question of how a protestant can challenge an agency's failure to
post adequate notice of a permit. Neither [FOCL], nor any of its members, requested
a contested case hearing from the TNRCC upon the [Authority] permit application
precisely because the TNRCC and the [Authority] failed to follow the requirements
for notice of such a permit. 



In reviewing de novo the district court's determination of subject-matter jurisdiction, we are to
"construe the pleadings in favor of the plaintiff," look to the pleader's intent, and accept the
pleadings' factual allegations as true. Rylander v. Caldwell, 23 S.W.3d 132, 135 (Tex.
App.--Austin 2000, no pet.). A review of FOCL's pleadings to intervene in the Authority's
declaratory judgment action reveals a host of claims, (5) many of them alleging the failure of the
Authority and the TNRCC to comply with the statutory and regulatory notice requirements of Senate
Bill 1 (6) and the Coastal Management Act. (7) 

 We need not examine the merits of these factual allegations to determine whether the
district court has jurisdiction. See Bland Indep. Sch. Dist., 34 S.W.3d at 554; see also Caldwell, 23
S.W.3d at 135. It is enough to note that on appeal FOCL does not contest the district court's finding
that on August 15, 1999, a notice of the Application was published in the San Antonio Express-News
and the New Braunfels Herald-Zeitung in satisfaction of the Water Code. Section 11.132(d) states
that the TNRCC may act on an application without holding a public hearing if:



 not less than 30 days before the date of action on the application by the
commission, the applicant has published the commission's notice of the
application at least once in a newspaper regularly published or circulated within
the section of the state where the source of water is located;



 . . . .


 within 30 days after the date of the newspaper publication of the commission's
notice, a public hearing has not been requested in writing by a commissioner, the
executive director, or an affected person who objects to the application.




Tex. Water Code Ann. § 11.132(d)(1)(3) (West 2000). FOCL admits that neither it, nor any of its
members, requested a contested case hearing within 30 days following the publication in these
newspapers of notice of the Authority's application. Nor is there an attempt to show that these
notices were insufficient or not in compliance with the Water Code. 

 In light of the facts, the district court concluded, and we agree, that FOCL failed to
exhaust all available administrative remedies. See Texas Water Comm'n v. Dellana, 849 S.W.2d
808, 810 (Tex. 1993); Larry Koch, Inc. v. Texas Natural Conservation Comm'n, 52 S.W.3d 833, 839
(Tex. App.--Austin 2001, pet. denied). (8) The district court therefore had no choice but to grant the
pleas to the jurisdiction, as a trial court "is generally without jurisdiction if the plaintiff fails to
exhaust his administrative remedies." Hill, 40 S.W.3d at 679 (citing Essenburg v. Dallas Co., 988
S.W.2d 188, 189 (Tex. 1998)). 

 FOCL contends that even if the exhaustion doctrine controls in this case, its failure
to exhaust should be excused because certain exceptions apply. FOCL argues that it should not be
required to exhaust when its challenge of agency action is based upon allegations that the Authority
and the TNRCC "exceeded its statutory authority or jurisdiction" or violated a statute. FOCL also
contends that its petition in intervention raised questions of law not governed by the exhaustion
doctrine. (9) Texas courts have held the exhaustion doctrine inapplicable when the action complained
of was taken without authority or in violation of a statute. See Westheimer Indep. Sch. Dist. v.
Brockette, 567 S.W.2d 780, 785 (Tex. 1978). Also, the requirement of exhaustion of administrative
remedies generally has been held inapplicable to questions of law. See Grounds v. Tolar Indep. Sch.
Dist., 707 S.W.2d 889, 892 (Tex. 1986). The appellees respond that, notwithstanding these
exceptions, FOCL's suits (which have been consolidated in this action) were filed after the
TNRCC's issuance of the Amendment, which constitutes a final order, and therefore these
exceptions do not control. We agree with the appellees' argument. 

 In this case, where the dispute focuses on issuance of an amendment after a lengthy
administrative process, these exceptions to the exhaustion doctrine could only have been invoked
if FOCL had sought judicial relief before the final agency order. For example, in Yamaha v. Motor
Vehicle Div., 860 S.W.2d 223 (Tex. App.--Austin 1993, writ denied), Yamaha, for the first time in
its judicial review action in court, challenged an order issued by the Texas Motor Vehicle
Commission partly on the grounds that the Commission had exceeded its statutory authority. This
Court rejected the challenge because Yamaha failed to assert such an argument in its motion for
rehearing before the Commission. We wrote:


We recognize that in certain limited circumstances, e.g., when an agency acts outside
its constitutional or statutory authority, a party may challenge the agency's action
independent of the procedural requirements imposed by APTRA in a statutory suit
for judicial review. . . . This exception, however, allows a party to challenge the
agency's action prior to the rendition of a final order.



Id. at 229 (emphasis in original) (citations omitted). Similarly, FOCL has waited until after the
issuance of the Amendment to make any challenge to the actions taken by the Authority and the
TNRCC. Although the situation confronting FOCL differs somewhat from that in Yamaha--because
FOCL never had a hearing before the TNRCC--the rationale in Yamaha is nonetheless applicable
here. Despite the uncontested fact that proper notice of the Application was published in August
1999, FOCL made no attempt to participate in the administrative process, nor did it seek judicial
relief, before the TNRCC issued the Amendment.

 Furthermore, while FOCL's petition in intervention alleges that the TNRCC exceeded
its statutory authority, the basis alleged for that complaint is not sufficient to confer jurisdiction. 
FOCL asserts that "Senate Bill 1 and the Coastal Management Act applied to the [Authority's]
Application because neither the TNRCC nor the [Authority] were complying with the requirements
of these acts in the processing of the Application." FOCL contends that the agencies failed to
provide notice of the Application and the Authority failed to provide statutorily required information
to the TNRCC as part of the application process; therefore, the TNRCC exercised authority beyond
that conferred by the legislature. But whether the agencies correctly complied with all of the
intricacies of the application process cannot be the factor that confers jurisdiction. Rather, FOCL
was required to allege that the TNRCC, by approving the Application and issuing the Amendment,
acted wholly outside its jurisdiction. See Gonzalez v. Texas Edu. Agency, 882 S.W.2d 526, 528
(Tex. App.--Austin 1994, no writ). The Water Code expressly authorizes the TNRCC to issue
"water rights permits" and in doing so it did not exercise authority beyond its statutorily conferred
powers. Tex. Water Code Ann. § 5.013(a) (West Supp. 2002); see also Lake Medina Conservation
Soc'y, Inc. v. Texas Natural Res. Conservation Comm'n, 980 S.W.2d 511, 516-17 (Tex.
App.--Austin 1998, pet. denied). 

 FOCL also argues that because the Authority brought this action pursuant to Chapter
1205 of the Government Code, standing was thereby conferred on FOCL "to contest the validity of
any of the actions taken by the [Authority]." See Tex. Gov't Code Ann. § 1205.021 (West 2000)
("Expedited Declaratory Judgment Act"). Appellees respond that this is an incorrect view of the
Expedited Declaratory Judgment Act because it does not alter the "preconditions to filing a suit for
administrative review." We agree with the appellees. The legislature enacted the Expedited
Declaratory Judgment Act to provide a method of adjudicating the validity of public securities in an
efficient and quick manner. Hatten v. City of Houston, 373 S.W.2d 525, 534 (Tex. Civ.
App.--Houston 1963, writ ref'd n.r.e.). But although Chapter 1205 grants FOCL standing to
challenge the issuance of the Authority's bonds, see Tex. Gov't Code Ann. § 1205.062 (West 2000),
it does not, by its own terms, provide an exception to the normal jurisdictional requirements for
challenging the final order of an administrative agency. Furthermore, FOCL does not direct us to,
and our own search does not reveal, any caselaw interpreting Chapter 1205 so as to alter judicial
review of an agency order and thereby relieve a challenger of the burden of exhausting its
administrative remedies. Nor are we willing to reach such a holding. 

 Finally, FOCL cannot confer or create jurisdiction solely because it sought a
declaratory judgment under the Administrative Procedure Act ("APA"). Section 2001.038 of the
APA authorizes a suit for declaratory judgment to determine "the validity or applicability of a rule,"
and states that "a court may render a declaratory judgment without regard to whether the plaintiff
requested the state agency to rule on the validity or applicability of the rule in question." Tex. Gov't
Code Ann. § 2001.038(a), (d) (West 2000). FOCL cites us to a recent decision by this Court wherein
we stated that "an aggrieved party does not have to exhaust all possible agency remedies before
bringing an action under Section 2001.038." WBD Oil & Gas Co. v. R.R. Comm'n, 35 S.W.3d 34,
46 (Tex. App.--Austin 1999, pet. granted) (citing Texas Dep't of Human Servs. v. ARA Living Ctrs.
of Tex., Inc., 833 S.W.2d 689, 692 (Tex. App.--Austin 1992, writ denied)). However, FOCL
overlooks the context in which we made that statement. 

 In WBD, the declaratory judgment action under the APA sought to challenge the
"validity or applicability" of rulings adopted by the Railroad Commission for the consolidation of
an oilfield; we determined that these met the APA's general requirements of an administrative rule. 
WBD Oil & Gas, 35 S.W.3d at 40-43. Here, WBD is cited for the proposition that FOCL's
"challenge that the TNRCC has failed to apply the requirements of Senate Bill 1 (or conversely
applied only the pre-Senate Bill 1 rules when Senate Bill 1 rules should apply) and that this failure
has harmed the FOCL's members is expressly excepted from the exhaustion requirements of the
APA." Based on this assertion, it is unclear what agency rule's validity or applicability FOCL
challenges. WBD clearly relates to challenging agency rules, but it does not allow FOCL to create
jurisdiction by challenging the TNRCC's failure to apply Senate Bill 1, a statute, to its approval of
the Amendment.

 Challenges to the Amendment are effective only within the context of an appeal to
the TNRCC through administrative channels, not by seeking a declaratory judgment that the TNRCC
violated the administrative code. As this Court recently held, section 2001.038 of the Texas
Government Code does not confer jurisdiction upon a court to determine whether an administrative
agency has complied with the administrative code. See Texas Dep't of Transp. v. City of Sunset
Valley, 2002 Tex. App. LEXIS 6338, at *14-16 (Tex. App.--Austin Aug. 30, 2002, no pet. h.)
(designated for publication). It authorizes a district court to resolve two issues: (1) whether a rule
is valid, and/or (2) whether a rule is applicable. Id. The potential controversy within an appeal to
the TNRCC is now at an end because FOCL did not pursue the contested case hearing necessary to
sue for judicial review. See Lopez v. Pub. Util. Comm'n, 816 S.W.2d 776, 782 (Tex. App.--Austin
1991, writ denied). FOCL failed to take the only additional step that would make it a party to the
TNRCC proceeding. See City of Port Arthur, 13 S.W.3d at 844. Even if the district court should
declare the validity or applicability of the Amendment, that court could not revive FOCL's appeal
in a context in which a declaratory judgment--brought under either the APA or under the Uniform
Declaratory Judgments Act--would have legal effect. See Lopez, 816 S.W.2d at 782. We therefore
overrule appellant's issue.


Texas Open Meetings Act

 In its first issue, FOCL complains that the district court erred in failing to find the 

Authority violated the Open Meetings Act ("the Act"). FOCL contends the Authority violated the
Open Meetings Act as a matter of law because the notice it published before the August 20, 1997
board meeting was inadequate to inform the public of the meeting's subject matter. Because the
facts are undisputed as to the content of the notice, a determination of its adequacy under the Open
Meetings Act is a question of law. See Rettberg v. Texas Dep't of Health, 873 S.W.2d 408, 413
(Tex. App.--Austin 1994, no writ). 

 The Open Meetings Act was enacted in 1967 for the purpose of "assuring that the
public has the opportunity to be informed concerning the transactions of public business." Act of
May 8, 1967, 60th Leg., R.S., ch. 271, § 7, 1967 Tex. Gen. Laws 597, 598. The Act requires that
governmental bodies give written notice of the subject of each meeting held. Tex. Gov't Code Ann.
§ 551.041 (West 1994). The Authority's notice of its August 20, 1997 board meeting included the
following subject descriptions: "Water Purchase Contract among GBRA, CRWA, City of Cibolo,
City of Marion, City of Schertz, ECWSC, GVSUD, SHWSC, & BMWD; Outline of Preliminary
Agreement concerning joint participation in a treated water supply for portions of Comal, Kendall,
& Bexar Counties." FOCL claims this notice was insufficient to inform the public that "the
[Authority] would seek an amendment of its Permit that would double the amount of water the
[Authority] was entitled to take on an annual basis from Canyon Lake and the Guadalupe River
under its then-existing permit, sell a portion of the water outside its ten-county area, and require the
construction of $75,000,000.00 of improvements." A summary of the supreme court's interpretation
of the Act's notice requirements is helpful.

 In Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641 (Tex.
1975), the challenged notice stated that the board of directors of the Lower Colorado River Authority
would consider "the ratification of the prior action of the Board taken on October 19, 1972, in
response to changes in electric power rates for electric power sold within the boundaries of the City
of San Marcos, Texas." Id. at 646. Conceding the notice was "not as clear as it might be," the court
nevertheless held that the notice was adequate because "it would alert a reader to the fact that some
action would be considered with respect to charges for electric power sold in San Marcos." Id. 

 Two years later, in Texas Turnpike Authority v. City of Fort Worth, 554 S.W.2d 675
(Tex. 1977), the court considered the notice for a meeting of the board of directors of the Texas
Turnpike Authority at which a resolution was passed to enlarge the Dallas-Fort Worth Turnpike. 
Id. at 676. The notice stated the board would "consider request . . . to determine feasibility of a bond
issue to expand and enlarge the Dallas-Fort Worth Turnpike." Id. The City asserted the notice
should have stated that this course of action was contrary to the board's prior declaration of its
intention to make the Turnpike a toll free road. The court upheld the notice, pointing out that "there
is no necessity to post copies of proposed resolutions or to state all of the consequences which may
necessarily flow from the consideration of the subject stated." Id. 

 In Cox Enterprises, Inc. v. Board of Trustees of the Austin Independent School
District, 706 S.W.2d 956 (Tex. 1986), the board of trustees of a school district posted notices of their
closed executive sessions that listed only general topics such as "personnel," "litigation," and "real
estate matters." Id. at 957. The court concluded that the "advance notice given under [the Open
Meetings Act] should specifically disclose the subjects to be considered at the upcoming meeting." 
Id. at 959. The court held that the board "did not provide full and adequate notice, particularly where
the subject slated for discussion was one of special interest to the public." Id. 

 In City of San Antonio v. Fourth Court of Appeals, 820 S.W.2d 762 (Tex. 1991), a
citizen challenged the city's condemnation of his land on the ground that the city's posting did not
describe the particular land to be condemned. The notice posted in advance of the city council
meeting stated that the city would address an ordinance "determining the necessity for and
authorizing the condemnation of certain property in County Blocks 4180, 4181, 4188, and 4297 in
Southwest Bexar County for the construction of the Applewhite Water Supply Project." The court
held the city "could have given more particularized notice," but this notice was "sufficient to ensure
that a reader was given adequate notice of the proposed governmental action." Id. at 765-66.

 Applying the supreme court's rulings about the purpose of giving notice to the public,
we hold that the Authority's notice is adequate. The supreme court has held notices to be sufficiently
descriptive that alerted readers to the particular issue the governing bodies would address--changes
in electric power rates, the enlargement of the Dallas-Fort Worth turnpike, and condemnation of land
located in a specific area of Bexar County. Although we agree that the Authority's notice is not as
clear as it might be, we believe that the notice is sufficient to give adequate notice to the public and
certainly more descriptive than, for example, the broad topics held to be inadequate in Cox
Enterprises. The Authority notified the public that it would consider a "Water Purchase Contract
among" a list of entities, including the Authority, and "Outline of Preliminary Agreement concerning
joint participation in a treated water supply for portions of" three particular counties. (10) 

 The notice here is substantially more descriptive than the posting in Hays County
Water Planning Partnership v. Hays County, 41 S.W.3d 174 (Tex. App.--Austin 2001, pet. denied),
a recent case in which this Court held "Presentation by Commissioner [name]" to be inadequate
notice concerning the detailed plan of the precise roads and infrastructure that the Commissioner
proposed to permit real estate development in Hays County. We concluded that the notice failed to
convey "any inkling of the substance of [the commissioner's] proposed presentation." Id. at 180
(emphasis in original). The notice provided by the Authority in advance of its August 20, 1997
meeting cannot be said to lack an "inkling" of the meeting's substance. Even though these
descriptions might not inform the casual reader of the precise consequences of the "Water Purchase
Contract" and "Agreement concerning joint participation in a treated water supply," we invoke the
supreme court's observation that "there is no necessity . . . to state all of the consequences which
may necessarily flow from the consideration of the subject stated." Texas Tpk. Auth., 554 S.W.2d
at 676.

 In City of San Antonio, the court recognized that the notice at issue was "insufficient
to inform the individual landowners that their particular tracts of land were the subject of the
proposed condemnation ordinance." City of San Antonio, 820 S.W.2d at 765-66. Nonetheless, the
court held that it was adequate to achieve the Act's "core purposes." Id. The court explained: "The
intended beneficiaries of the [Open Meetings] Act are not individual citizens, such as the particular
landowners affected by this condemnation, but members of the interested public. If a 'reader' is
given notice, the requirement of the Act is satisfied and its purpose served." Id. Like the notice in
City of San Antonio, the Authority's notice satisfied the Act's "core purposes" because it informed
a reader as a member of the interested public of the topics to be addressed at the board meeting. 
While it could have provided more, the detail in the notice was adequate to hold that the Authority
did not violate the Act. (11) We therefore overrule appellant's issue. 

 Even if we were to conclude that the notice was inadequate, we question how FOCL
would then be able to attack the TNRCC Amendment. As the Authority points out, FOCL seeks to
invalidate the TNRCC Amendment by attacking the validity of the Application leading to the
Amendment. FOCL alleges that the Application filed with the TNRCC by another agency was
improperly approved pursuant to the other agency's Open Meetings Act violation. But this reasoning
conflicts with the well established principle that an agency's final order, like the final judgment of
a court of law, is immune from collateral attack. See Alamo Express, Inc. v. Union City Transfer,
309 S.W.2d 815, 827 (Tex. 1958) (collateral attack on Railroad Commission order impermissible
because administrative statutes provided sole method of attack); see also State v. Triax Oil & Gas,
Inc., 966 S.W.2d 123, 126 (Tex. App.--Austin 1998, no pet.). (12) Exceptions to this general rule
excluding collateral attacks are limited. Texas Dep't of Transp. v. T. Brown Const., 947 S.W.2d 655,
659 (Tex. App.--Austin 1997, pet. denied). 

 We have already determined that the TNRCC did not act beyond its statutory
authority by issuing the Amendment. And FOCL has made no attempt to prove that the Amendment
is in some manner fundamentally flawed. Rather, and as we understand its argument, FOCL claims
to be making a direct attack on the Amendment, claiming the Authority's violation of the Act in
approving the Application at an improper meeting causes the TNRCC's Amendment to be void. 
This contention overlooks the express language of the Act, which states that "an action taken by a
governmental body in violation of this chapter is voidable." Tex. Gov't Code Ann. § 551.141 (West
1994). In the context of this case, we take this language to mean that, at best, FOCL could ask this
Court to set aside the voidable action taken by the Authority at its August 20, 1997 meeting. (13) If we
were to do that, however, the Amendment itself would still stand. The Act does not provide an
exception to the rule against collateral attack on final agency orders. See, e.g., Carr v. Bell Sav. &
Loan Ass'n, 786 S.W.2d 761, 765 (Tex. App.--Texarkana 1990, writ denied). (14) Invalidating the
Application based on the Authority's actions would not provide a method of direct attack on the
Amendment, which FOCL admits is a final order by an altogether separate governmental body. 


Discovery Requests

 FOCL finally argues that the district court erred by denying its discovery requests
with the TNRCC. According to FOCL, these discovery requests were relevant because they were
directly linked to the claims dismissed by the district court for lack of subject-matter jurisdiction. 
We note that this complaint is not shown in the brief as an "issue presented" but instead is raised for
the first time only in discussion at the end of the brief. Nor does the argument cite any authority. 
The brief on this point submitted by appellant is therefore not in accordance with Tex. R. App. P.
38.1(e), (h). Also, because we have affirmed the dismissal of those claims, we need not further
address this issue; to the extent the matter is asserted, we overrule the complaint. 


CONCLUSION


 For the reasons set forth above, we overrule FOCL's issues on appeal. We affirm

the judgment of the district court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Patterson and Puryear

Affirmed

Filed: October 31, 2002

Publish
1. By statute effective September 1, 2001, the legislature changed the name of the Texas
Natural Resource Conservation Commission to the Texas Commission on Environmental Quality,
to be effective January 1, 2004. The statute granted the TNRCC authority to adopt a timetable for
phasing in the change of the agency's name, so that until January 1, 2004, the agency may perform
any act authorized by law under either title. See Act of April 20, 2001, 77th Leg., R.S., ch. 965,
§ 18.01, 2001 Tex. Gen. Laws 1985. On September 1, 2002, the agency began using its new name,
while continuing to recognize the former. Because the parties have referred to the agency as the
TNRCC in the briefs and at oral argument, we will use the acronym "TNRCC" in this opinion.
2. According to the final judgment of the district court, the three original lawsuits were as
follows: (i) Friends of Canyon Lake, Inc. v. The Texas Natural Resource Conservation Commission
and its Executive Director Mr. Jeff Saitas and the Guadalupe-Blanco River Authority, Cause No.
GN-102688 (originally filed in the 200th Judicial District Court, Travis County, Texas); (ii) Friends
of Canyon Lake, Inc. v. The Texas Natural Resource Conservation Commission and its Executive
Director Mr. Jeff Saitas and the Guadalupe-Blanco River Authority, Cause No. GN-103054
(originally filed in the 353rd Judicial District Court, Travis County, Texas); and (iii) Friends of
Canyon Lake, Inc. v. The Texas Natural Resource Conservation Commission and its Executive
Director Mr. Jeff Saitas, Cause No. GN-103689 (originally filed in the 126th Judicial District Court,
Travis County, Texas).

3. In its findings of fact and conclusions of law, the district court states that the deadline for
filing a contested case hearing on the Application was thirty days after the August 15, 1999
publication of notice in the two newspapers. See 30 Tex. Admin. Code § 295.171 (2002) (Natural
Resource Conservation Commission, Water Rights, Procedural). The district court also finds that
this notice was sufficient, as evidenced by the fact that a timely request for a contested case hearing
was filed by Guadalupe River Trout Unlimited ("Trout Unlimited"), among others. In regard to
Trout Unlimited, the district court found that the Authority's Board meeting on July 17, 2001 to
approve a settlement agreement with Trout Unlimited complied with the Open Meetings Act. That
finding is not on appeal here. 
4. Although this appears as one of the district court's conclusions of law, the judgment is
limited to holding that FOCL "has failed to demonstrate any violation by [the Authority] of the Open
Meetings Act. . . ." In fact, following these words it is stated that FOCL's "Open Meetings Act
claims also are impermissible collateral attacks." But this statement is marked out and initialed by
Judge Cooper. 
5. In its brief on appeal, FOCL lists seven of its claims alleged in the petition in intervention. 
According to FOCL, the Amendment is jurisdictionally and procedurally defective because: (1) the
requirements of Senate Bill 1 applied to the Authority's Application and that, having failed to
comply with these requirements, the TNRCC was without jurisdiction to consider the Application;
(2) the requirements of the Coastal Management Act applied to the Application and that, having
failed to comply with these requirements, the TNRCC was without jurisdiction to approve the
Application; (3) the Authority failed to comply with the requirements of its own enabling act when
it filed the Application; (4) the TNRCC was statutorily barred from considering the Application
because the Authority never paid the full fees for the Application, or paid them late and therefore
Senate Bill 1 should apply; (5) the TNRCC and the Authority failed to comply with the statutory and
regulatory notice requirements that applied to the Application; (6) the Amendment was void because
the Authority had "used" or had "begun to use" water under the permit prior to paying its final permit
fees; and (7) the Application was issued in violation of TNRCC statutes and rules because the
Application was amended after public notice had issued. 
6. In its brief, FOCL cites generally to the entirety of Senate Bill 1, but refers specifically to
the amended requirements of an "inter-basin water transfer." See Tex. Water Code Ann. § 11.085
(West 2000) [Amended by Act of Apr. 3, 1997, 75th Leg., ch. 1010, § 2.08, 1997 Tex. Gen. Laws
3621-23].
7. In its brief, FOCL cites generally to chapter 33 of the Natural Resources Code, referring
to it as the "Coastal Management Act." Chapter 33 is in fact known as the Coastal Public Lands
Management Act of 1973. See Tex. Nat. Res. Code Ann. § 33.003 (West 2001). Section 33.053 of
the Natural Resources Code specifies the elements of the coastal management program in Texas,
which is to be in compliance with the federal Coastal Zone Management Act of 1972. See id.
§ 33.053(a) (citing 16 U.S.C. Section 1451 et seq.). 
8. Even if FOCL could prove facts amounting to insufficient notice, jurisdiction would not
thereby be automatically conferred on the district court. See, e.g., Wilmer-Hutchins Indep. Sch. Dist.
v. Sullivan, 51 S.W.3d 293, 294-95 (Tex. 2001) (district court lacked subject-matter jurisdiction even
where school district's conduct prevented plaintiff from exhausting administrative remedies). 
9. The questions of law, according to FOCL, are whether Senate Bill 1 and the Coastal
Management Act apply to the Application. 
10. FOCL complains that the notice in no way reflects the final action taken at the meeting,
which it alleges was to, among other things, "sell a portion of the water outside its ten county
area . . . ." We note that this claim is made despite the fact that the notice clearly lists Bexar County
among the counties considered for the treated water supply. 
11. On appeal, FOCL complains about the notice for a board meeting held by the Authority
on October 16, 1996. It contends that "the certificate of authority to file the application for
amendment of permit filed by [the Authority's] general manager on August 29, 1997 indicates he
was given authority to file the application at the August 20, 1997 [Authority] Board meeting, not the
October 16, 1996 Board meeting." FOCL also contends that the language of the notice, "increase
yield of Canyon Reservoir," does not adequately satisfy the Act. However, as suggested by FOCL,
the Application was filed pursuant to the 1997 Board meeting. Having concluded that the 1997
meeting satisfied the Act, we need not address the 1996 meeting.
12. It is undisputed that the Amendment constitutes a final agency order.
13. Section 551.142 of the Act states in part that an interested person "may bring an action
by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this
chapter by members of a governmental body." Tex. Gov't Code Ann. § 551.142(a) (West 1994). 
14. In Carr, the appellant attacked the decision of one agency, the Appraisal Review Board,
based on deficiencies in meeting notices sent by another agency, the Central Appraisal District. The
court held that by the terms of the Open Meetings Act, this was a collateral attack. The court wrote:


 Assuming that [Carr] could qualify as an "interested person" within the Open
Meetings Act, he could attack an action of a governmental body for violations of
the Act only directly, not collaterally. The Act provides that any action taken by
such a body in violation of the Act is only voidable, not void. 


Carr v. Bell Sav. & Loan Ass'n, 786 S.W.2d 761, 765 (Tex. App.--Texarkana 1990, writ denied).