# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-02-00221-CV

---

**Friends of Canyon Lake, Inc., Appellant**

**v.**

**Guadalupe-Blanco River Authority; The Attorney General of Texas; Canyon Regional Water Authority; The Texas Natural Resource Conservation Commission; Bexar Metropolitan Water District; San Antonio Water System; City of Boerne; and City of Fair Oaks Ranch, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. GN104169, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

---

This is an appeal of a declaratory judgment in a bond validation action authorizing the Guadalupe-Blanco River Authority (Athe Authority@) to issue bonds relating to a water project that had been approved by the Texas Natural Resource Conservation Commission (Athe TNRCC@ or Athe Commission@).[1] Appellant Friends of Canyon Lake, Inc. (AFOCL@) appeals the district court=s order

---

[1] By statute effective September 1, 2001, the legislature changed the name of the Texas Natural Resource Conservation Commission to the Texas Commission on Environmental Quality, to be effective January 1, 2004. The statute granted the TNRCC authority to adopt a timetable for phasing in the change of the agency=s name, so that until January 1, 2004, the agency may perform any act authorized by law under either title. *See* Act of April 20, 2001, 77th Leg., R.S., ch. 965, ' 18.01, 2001 Tex. Gen. Laws 1985. On September 1, 2002, the agency began using its new name, while continuing to recognize the former. Because the parties have referred to the agency as the TNRCC in the briefs and at oral argument, we will use the acronym ATNRCC@ in this opinion.

granting the Authority=s and the Commission=s pleas to the jurisdiction and the judgment failing to find that the Authority violated the notice requirements of the Open Meetings Act, *see* Tex. Gov=t Code Ann. ' 551.041 (West 1994), validating the TNRCC approval, and authorizing the issuance of the bonds. In two issues, FOCL contends the district court erred because: (1) the evidence establishes as a matter of law that at its August 20, 1997 meeting the Authority violated the Open Meetings Act by taking final action on a matter not reflected in the notice of the meeting; and (2) the pleas to the jurisdiction were improperly granted because FOCL raised claims that were exempt from the exhaustion doctrine and were independent of FOCL=s claims under the Administrative Procedure Act. We will affirm the district court=s judgment.

### BACKGROUND

The Authority is a ten-county conservation and reclamation district and agency of the State of Texas. *See* Tex. Const. art. XVI, ' 59. On August 29, 1997, the general manager of the Authority, William E. West, filed an application (Athe Application@) with the TNRCC requesting authorization to meet increasing demands for surface water in central Texas communities. The Application sought to: (1) increase the annual take from Canyon Reservoir from a maximum of 62,900 acre feet of water to 120,000 acre feet, (2) increase the maximum allowable over five consecutive years from 250,000 acre feet to 450,000 acre feet, and (3) sell the water outside of the Authority=s ten county area. On August 15, 1999, shortly after the Application had been declared administratively complete, notice of the Application was published in the *San Antonio Express-News* and the *New Braunfels Herald-Zeitung*, newspapers of general circulation in the area surrounding Canyon Reservoir. The TNRCC approved the Application and on August 9, 2001, issued an Amendment to the Authority=s Certificate of Adjudication No. 18-2074 (Athe Amendment@).

2

Shortly thereafter, appellant was incorporated and immediately filed three lawsuits contesting the TNRCC=s amendment decision.[2]  Meanwhile, for the purpose of undertaking the water project, the Authority approved a resolution to issue $75,000,000 in contract revenue bonds.  Issuance of the bonds was not approved by the Attorney General, however, because their security was jeopardized by the pending lawsuits.  Therefore, the Authority brought this declaratory judgment action to resolve the controversy surrounding the issuance of the bonds.  *See* Tex. Gov=t Code Ann. ' 1205.021 (West 2000) (AExpedited Declaratory Judgment Act@).

---

[2]    According to the final judgment of the district court, the three original lawsuits were as follows: (i) *Friends of Canyon Lake, Inc. v. The Texas Natural Resource Conservation Commission and its Executive Director Mr. Jeff Saitas and the Guadalupe-Blanco River Authority*, Cause No. GN-102688 (originally filed in the 200th Judicial District Court, Travis County, Texas); (ii) *Friends of Canyon Lake, Inc. v. The Texas Natural Resource Conservation Commission and its Executive Director Mr. Jeff Saitas and the Guadalupe-Blanco River Authority*, Cause No. GN-103054 (originally filed in the 353rd Judicial District Court, Travis County, Texas); and (iii) *Friends of Canyon Lake, Inc. v. The Texas Natural Resource Conservation Commission and its Executive Director Mr. Jeff Saitas*, Cause No. GN-103689 (originally filed in the 126th Judicial District Court, Travis County, Texas).

FOCL and the other appellees, including the TNRCC, intervened in the Authority=s suit. FOCL=s three suits were consolidated with the Authority=s expedited declaratory judgment action. On March 5, 2002, the district court heard arguments in a pretrial hearing on pleas to the jurisdiction filed by both the Authority and the TNRCC and subsequently dismissed all but one of FOCL=s challenges to the TNRCC=s decision to issue the Amendment. The district court determined that it lacked subject-matter jurisdiction of the complaints because FOCL had failed to exhaust its administrative remedies. Neither FOCL nor any individual member of FOCL timely requested a contested case hearing on the Application.[3] According to the district court, FOCL was not a Aparty@ to the TNRCC proceeding and had no right to make a direct attack on the TNRCC=s issuance of the Amendment. *See* Tex. Gov=t Code Ann. ' 2001.003(4) (West 2000); *see also City of Port Arthur v. Southwestern Bell Tel. Co.*, 13 S.W.3d 841, 844 (Tex. App.CAustin 2000, no pet.).

---

[3]  In its findings of fact and conclusions of law, the district court states that the deadline for filing a contested case hearing on the Application was thirty days after the August 15, 1999 publication of notice in the two newspapers. *See* 30 Tex. Admin. Code ' 295.171 (2002) (Natural Resource Conservation Commission, Water Rights, Procedural). The district court also finds that this notice was sufficient, as evidenced by the fact that a timely request for a contested case hearing was filed by Guadalupe River Trout Unlimited (ATrout Unlimited@), among others. In regard to Trout Unlimited, the district court found that the Authority=s Board meeting on July 17, 2001 to approve a settlement agreement with Trout Unlimited complied with the Open Meetings Act. That finding is not on appeal here.

However, the district court did not dismiss FOCL=s Open Meetings Act challenge, and on March 18, 2002, it conducted a trial on the Authority=s request for relief under the Expedited Declaratory Judgment Act and FOCL=s Open Meetings Act claims. In its final judgment, the district court ruled that the Authority had shown itself entitled to the relief sought and FOCL had failed to demonstrate any violation by the Authority of the Open Meetings Act. In its findings of fact and conclusions of law, the district court determined, among other things, that: (1) the actions relating to the Application that were taken by the Authority at its October 16, 1996 and August 20, 1997 board meetings were a Alogical consequence@ of the meetings and were, therefore, in compliance with the Open Meetings Act; (2) neither FOCL nor any of its members requested a contested case hearing on the Application; (3) FOCL=s Open Meetings Act claims were moot and impermissible collateral attacks on the Amendment;[4] and (4) the Application was, in any case, approved and ratified by the Authority=s Board on June 13, 2001, in a meeting that complied with the Open Meetings Act. FOCL=s challenges to the Amendment were thus without merit, and the Amendment constituted a valid and binding action of the TNRCC. The district court=s judgment authorized the Authority to issue the bonds necessary for its water project. This appeal followed.

**DISCUSSION**

On appeal, FOCL presents its Open Meetings Act issue first and the plea to the jurisdiction issue second. Because some arguments relevant to the first issue are addressed in our discussion of the

---

[4] Although this appears as one of the district court=s conclusions of law, the judgment is limited to holding that FOCL Ahas failed to demonstrate any violation by [the Authority] of the Open Meetings Act. . . .@ In fact, following these words it is stated that FOCL=s AOpen Meetings Act claims also are impermissible collateral attacks.@ But this statement is marked out and initialed by Judge Cooper.

second, and also for the sake of convenience, we will first address FOCL=s contention that the district court erred by dismissing its claims on appellees= pleas to the jurisdiction.

### *Plea to the Jurisdiction*

A plea to the jurisdiction challenges the district court=s authority to determine the subject matter of the cause of action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject-matter jurisdiction raises a question of law, which we review *de novo. Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). The burden is on the non-movant to plead facts sufficient to show that the district court has subject-matter jurisdiction. *Texas Ass=n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Of course, a trial court must not force the non-movant to prove its entire case before trial. *See Bland*, 34 S.W.3d at 555. But a trial court does have the discretion to determine subject-matter jurisdiction in a preliminary hearing or to await a more detailed development of the merits of the case. *See id.* at 554. Here, the district court held a preliminary hearing at which evidence was considered. It determined that FOCL=s challenges to the Amendment, except its Open Meetings Act claims, failed to confer subject-matter jurisdiction because it had not exhausted its administrative remedies. We will uphold the decision of the district court.

It is well settled that a party must exhaust its administrative remedies before seeking judicial review of an agency decision. *See* Tex. Gov=t Code Ann. ' 2001.171 (West 2000); *see also Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294-95 (Tex. 2001). This Court, applying the rule announced in *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000), has held that the requirement of seeking a remedy with the administrative agency is jurisdictional rather than a matter going solely to a

6

plaintiff=s right to relief. *See Hill v. Board of Trs., Ret. Sys.*, 40 S.W.3d 676, 678 (Tex. App.CAustin 2001, no pet.) (Concluding that kind of case district court may hear is defined and restricted to Athose in which the plaintiff has exhausted its administrative remedies and completed the administrative process.@). The Texas Legislature and the TNRCC have established a process for affected persons to participate in certain agency decisions, including by requesting and participating in contested case hearings. *See* Tex. Gov=t Code Ann. ' 2003.047(b); *see also* 30 Tex. Admin. Code '' 55.21-.31 (2001) (Natural Resource Conservation Commission, Request for Contested Case Hearings). The district court granted the pleas to the jurisdiction because FOCL admittedly failed to avail itself of this process.

FOCL, however, contests the applicability of the exhaustion doctrine to its case. It contends that the Authority places FOCL in an impossible situation because neither it, nor any of its members, was ever provided with notice of the Application. According to FOCL:

> The trial court=s dismissal of [FOCL=s] claims for failure to request a contested case hearing begs the question of how a protestant can challenge an agency=s failure to post adequate notice of a permit. Neither [FOCL], nor any of its members, requested a contested case hearing from the TNRCC upon the [Authority] permit application precisely because the TNRCC and the [Authority] failed to follow the requirements for notice of such a permit.

In reviewing *de novo* the district court=s determination of subject-matter jurisdiction, we are to Aconstrue the pleadings in favor of the plaintiff,@ look to the pleader=s intent, and accept the pleadings= factual allegations as true. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.CAustin 2000, no pet.). A review of FOCL=s pleadings to intervene in the Authority=s declaratory judgment action reveals a host of claims,[5]

---

[5] In its brief on appeal, FOCL lists seven of its claims alleged in the petition in intervention.

7

many of them alleging the failure of the Authority and the TNRCC to comply with the statutory and regulatory notice requirements of Senate Bill 1[6] and the Coastal Management Act.[7]

We need not examine the merits of these factual allegations to determine whether the district court has jurisdiction. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554; *see also Caldwell*, 23 S.W.3d at 135. It is enough to note that on appeal FOCL does not contest the district court=s finding that on August 15, 1999, a notice of the Application was published in the *San Antonio Express-News* and the *New Braunfels Herald-Zeitung* in satisfaction of the Water Code. Section 11.132(d) states that the TNRCC may act on an application without holding a public hearing if:

According to FOCL, the Amendment is jurisdictionally and procedurally defective because: (1) the requirements of Senate Bill 1 applied to the Authority=s Application and that, having failed to comply with these requirements, the TNRCC was without jurisdiction to consider the Application; (2) the requirements of the Coastal Management Act applied to the Application and that, having failed to comply with these requirements, the TNRCC was without jurisdiction to approve the Application; (3) the Authority failed to comply with the requirements of its own enabling act when it filed the Application; (4) the TNRCC was statutorily barred from considering the Application because the Authority never paid the full fees for the Application, or paid them late and therefore Senate Bill 1 should apply; (5) the TNRCC and the Authority failed to comply with the statutory and regulatory notice requirements that applied to the Application; (6) the Amendment was void because the Authority had Aused@ or had Abegun to use@ water under the permit prior to paying its final permit fees; and (7) the Application was issued in violation of TNRCC statutes and rules because the Application was amended after public notice had issued.

[6]    In its brief, FOCL cites generally to the entirety of Senate Bill 1, but refers specifically to the amended requirements of an Ainter-basin water transfer.@ *See* Tex. Water Code Ann. ' 11.085 (West 2000) [Amended by Act of Apr. 3, 1997, 75th Leg., ch. 1010, ' 2.08, 1997 Tex. Gen. Laws 3621-23].

[7]    In its brief, FOCL cites generally to chapter 33 of the Natural Resources Code, referring to it as the ACoastal Management Act.@ Chapter 33 is in fact known as the Coastal Public Lands Management Act of 1973. *See* Tex. Nat. Res. Code Ann. ' 33.003 (West 2001). Section 33.053 of the Natural Resources Code specifies the elements of the coastal management program in Texas, which is to be in compliance with the federal Coastal Zone Management Act of 1972. *See id.* ' 33.053(a) (citing 16 U.S.C. Section 1451 et seq.).

(1) not less than 30 days before the date of action on the application by the commission, the applicant has published the commission=s notice of the application at least once in a newspaper regularly published or circulated within the section of the state where the source of water is located;

. . . .

(3) within 30 days after the date of the newspaper publication of the commission=s notice, a public hearing has not been requested in writing by a commissioner, the executive director, or an affected person who objects to the application.

Tex. Water Code Ann. ' 11.132(d)(1)(3) (West 2000). FOCL admits that neither it, nor any of its members, requested a contested case hearing within 30 days following the publication in these newspapers of notice of the Authority=s application. Nor is there an attempt to show that these notices were insufficient or not in compliance with the Water Code.

In light of the facts, the district court concluded, and we agree, that FOCL failed to exhaust all available administrative remedies. *See Texas Water Comm=n v. Dellana*, 849 S.W.2d 808, 810 (Tex. 1993); *Larry Koch, Inc. v. Texas Natural Conservation Comm=n*, 52 S.W.3d 833, 839 (Tex. App.CAustin 2001, pet. denied).[8] The district court therefore had no choice but to grant the pleas to the jurisdiction, as a trial court Ais generally without jurisdiction if the plaintiff fails to exhaust his administrative

---

[8] Even if FOCL could prove facts amounting to insufficient notice, jurisdiction would not thereby be automatically conferred on the district court. *See, e.g.*, *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294-95 (Tex. 2001) (district court lacked subject-matter jurisdiction even where school district=s conduct prevented plaintiff from exhausting administrative remedies).

remedies.@ *Hill*, 40 S.W.3d at 679 (citing *Essenburg v. Dallas Co.*, 988 S.W.2d 188, 189 (Tex. 1998)).

FOCL contends that even if the exhaustion doctrine controls in this case, its failure to exhaust should be excused because certain exceptions apply. FOCL argues that it should not be required to exhaust when its challenge of agency action is based upon allegations that the Authority and the TNRCC Aexceeded its statutory authority or jurisdiction@ or violated a statute. FOCL also contends that its petition in intervention raised questions of law not governed by the exhaustion doctrine.[9] Texas courts have held the exhaustion doctrine inapplicable when the action complained of was taken without authority or in violation of a statute. *See Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978). Also, the requirement of exhaustion of administrative remedies generally has been held inapplicable to questions of law. *See Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986). The appellees respond that, notwithstanding these exceptions, FOCL=s suits (which have been consolidated in this action) were filed after the TNRCC=s issuance of the Amendment, which constitutes a final order, and therefore these exceptions do not control. We agree with the appellees= argument.

In this case, where the dispute focuses on issuance of an amendment after a lengthy administrative process, these exceptions to the exhaustion doctrine could only have been invoked if FOCL had sought judicial relief before the final agency order. For example, in *Yamaha v. Motor Vehicle Div.*, 860 S.W.2d 223 (Tex. App.CAustin 1993, writ denied), Yamaha, for the first time in its judicial review

---

**9** The questions of law, according to FOCL, are whether Senate Bill 1 and the Coastal Management Act apply to the Application.

action in court, challenged an order issued by the Texas Motor Vehicle Commission partly on the grounds that the Commission had exceeded its statutory authority. This Court rejected the challenge because Yamaha failed to assert such an argument in its motion for rehearing before the Commission. We wrote:

> We recognize that in certain limited circumstances, *e.g.*, when an agency acts outside its constitutional or statutory authority, a party may challenge the agency=s action independent of the procedural requirements imposed by APTRA in a statutory suit for judicial review. . . . This exception, however, allows a party to challenge the agency=s action *prior* to the rendition of a final order.

*Id.* at 229 (emphasis in original) (citations omitted). Similarly, FOCL has waited until *after* the issuance of the Amendment to make any challenge to the actions taken by the Authority and the TNRCC. Although the situation confronting FOCL differs somewhat from that in *Yamaha*Cbecause FOCL never had a hearing before the TNRCCCthe rationale in *Yamaha* is nonetheless applicable here. Despite the uncontested fact that proper notice of the Application was published in August 1999, FOCL made no attempt to participate in the administrative process, nor did it seek judicial relief, before the TNRCC issued the Amendment.

Furthermore, while FOCL=s petition in intervention alleges that the TNRCC exceeded its statutory authority, the basis alleged for that complaint is not sufficient to confer jurisdiction. FOCL asserts that ASenate Bill 1 and the Coastal Management Act applied to the [Authority=s] Application because neither the TNRCC nor the [Authority] were complying with the requirements of these acts in the processing of the Application.@ FOCL contends that the agencies failed to provide notice of the Application and the Authority failed to provide statutorily required information to the TNRCC as part of the application process; therefore, the TNRCC exercised authority beyond that conferred by the legislature. But whether

11

the agencies correctly complied with all of the intricacies of the application process cannot be the factor that confers jurisdiction. Rather, FOCL was required to allege that the TNRCC, by approving the Application and issuing the Amendment, acted wholly outside its jurisdiction. *See Gonzalez v. Texas Edu. Agency*, 882 S.W.2d 526, 528 (Tex. App.CAustin 1994, no writ). The Water Code expressly authorizes the TNRCC to issue Awater rights permits@ and in doing so it did not exercise authority beyond its statutorily conferred powers. Tex. Water Code Ann. ' 5.013(a) (West Supp. 2002); *see also Lake Medina Conservation Soc=y, Inc. v. Texas Natural Res. Conservation Comm=n*, 980 S.W.2d 511, 516-17 (Tex. App.CAustin 1998, pet. denied).

FOCL also argues that because the Authority brought this action pursuant to Chapter 1205 of the Government Code, standing was thereby conferred on FOCL Ato contest the validity of any of the actions taken by the [Authority].@ *See* Tex. Gov=t Code Ann. ' 1205.021 (West 2000) (AExpedited Declaratory Judgment Act@). Appellees respond that this is an incorrect view of the Expedited Declaratory Judgment Act because it does not alter the Apreconditions to filing a suit for administrative review.@ We agree with the appellees. The legislature enacted the Expedited Declaratory Judgment Act to provide a method of adjudicating the validity of public securities in an efficient and quick manner. *Hatten v. City of Houston*, 373 S.W.2d 525, 534 (Tex. Civ. App.CHouston 1963, writ ref=d n.r.e.). But although Chapter 1205 grants FOCL standing to challenge the issuance of the Authority=s bonds, *see* Tex. Gov=t Code Ann. ' 1205.062 (West 2000), it does not, by its own terms, provide an exception to the normal jurisdictional requirements for challenging the final order of an administrative agency. Furthermore, FOCL does not direct us to, and our own search does not reveal, any caselaw interpreting Chapter 1205 so as to alter

12

judicial review of an agency order and thereby relieve a challenger of the burden of exhausting its administrative remedies.  Nor are we willing to reach such a holding.

Finally, FOCL cannot confer or create jurisdiction solely because it sought a declaratory judgment under the Administrative Procedure Act (AAPA@).  Section 2001.038 of the APA authorizes a suit for declaratory judgment to determine Athe validity or applicability of a rule,@ and states that Aa court may render a declaratory judgment without regard to whether the plaintiff requested the state agency to rule on the validity or applicability of the rule in question.@  Tex. Gov=t Code Ann. ' 2001.038(a), (d) (West 2000).  FOCL cites us to a recent decision by this Court wherein we stated that Aan aggrieved party does not have to exhaust all possible agency remedies before bringing an action under Section 2001.038.@ *WBD Oil & Gas Co. v. R.R. Comm=n*, 35 S.W.3d 34, 46 (Tex. App.CAustin 1999, pet. granted) (citing *Texas Dep=t of Human Servs. v. ARA Living Ctrs. of Tex., Inc.*, 833 S.W.2d 689, 692 (Tex. App.CAustin 1992, writ denied)).  However, FOCL overlooks the context in which we made that statement.

In *WBD*, the declaratory judgment action under the APA sought to challenge the Avalidity or applicability@ of rulings adopted by the Railroad Commission for the consolidation of an oilfield; we determined that these met the APA=s general requirements of an administrative rule.  *WBD Oil & Gas*, 35 S.W.3d at 40-43.  Here, *WBD* is cited for the proposition that FOCL=s Achallenge that the TNRCC has failed to apply the requirements of Senate Bill 1 (or conversely applied only the pre-Senate Bill 1 rules when Senate Bill 1 rules should apply) and that this failure has harmed the FOCL=s members is expressly excepted from the exhaustion requirements of the APA.@  Based on this assertion, it is unclear what agency rule=s validity or applicability FOCL challenges.  *WBD* clearly relates to challenging *agency* rules, but it does

not allow FOCL to create jurisdiction by challenging the TNRCC=s failure to apply Senate Bill 1, a statute, to its approval of the Amendment.

Challenges to the Amendment are effective only within the context of an appeal to the TNRCC through administrative channels, not by seeking a declaratory judgment that the TNRCC violated the administrative code. As this Court recently held, **section 2001.038 of the Texas Government Code does not confer jurisdiction upon a court to determine whether an administrative agency has complied with the administrative code.** *See Texas Dep=t of Transp. v. City of Sunset Valley*, 2002 Tex. App. LEXIS 6338, at \*14-16 (Tex. App.CAustin Aug. 30, 2002, no pet. h.) (designated for publication). **It authorizes a district court to resolve two issues: (1) whether a rule is *valid*, and/or (2) whether a rule is *applicable*.** *Id.* The potential controversy within an appeal to the TNRCC is now at an end because FOCL did not pursue the contested case hearing necessary to sue for judicial review. *See Lopez v. Pub. Util. Comm=n*, 816 S.W.2d 776, 782 (Tex. App.CAustin 1991, writ denied). FOCL failed to take the only additional step that would make it a party to the TNRCC proceeding. *See City of Port Arthur*, 13 S.W.3d at 844. Even if the district court should declare the validity or applicability of the Amendment, that court could not revive FOCL=s appeal in a context in which a declaratory judgmentCbrought under either the APA or under the Uniform Declaratory Judgments ActCwould have legal effect. *See Lopez*, 816 S.W.2d at 782. We therefore overrule appellant=s issue.

*Texas Open Meetings Act*

In its first issue, FOCL complains that the district court erred in failing to find the

Authority violated the Open Meetings Act (Athe Act@).  FOCL contends the Authority violated the Open Meetings Act as a matter of law because the notice it published before the August 20, 1997 board meeting was inadequate to inform the public of the meeting=s subject matter.  Because the facts are undisputed as to the content of the notice, a determination of its adequacy under the Open Meetings Act is a question of law. *See Rettberg v. Texas Dep=t of Health*, 873 S.W.2d 408, 413 (Tex. App.CAustin 1994, no writ).

The Open Meetings Act was enacted in 1967 for the purpose of Aassuring that the public has the opportunity to be informed concerning the transactions of public business.@ Act of May 8, 1967, 60th Leg., R.S., ch. 271, ' 7, 1967 Tex. Gen. Laws 597, 598.  The Act requires that governmental bodies give written notice of the subject of each meeting held.  Tex. Gov=t Code Ann. ' 551.041 (West 1994). The Authority=s notice of its August 20, 1997 board meeting included the following subject descriptions: AWater Purchase Contract among GBRA, CRWA, City of Cibolo, City of Marion, City of Schertz, ECWSC, GVSUD, SHWSC, & BMWD; Outline of Preliminary Agreement concerning joint participation in a treated water supply for portions of Comal, Kendall, & Bexar Counties.@ FOCL claims this notice was insufficient to inform the public that Athe [Authority] would seek an amendment of its Permit that would double the amount of water the [Authority] was entitled to take on an annual basis from Canyon Lake and the Guadalupe River under its then-existing permit, sell a portion of the water outside its ten-county area, and require the construction of $75,000,000.00 of improvements.@  A summary of the supreme court=s interpretation of the Act=s notice requirements is helpful.

In *Lower Colorado River Authority v. City of San Marcos*, 523 S.W.2d 641 (Tex. 1975), the challenged notice stated that the board of directors of the Lower Colorado River

Authority would consider Athe ratification of the prior action of the Board taken on October 19, 1972, in response to changes in electric power rates for electric power sold within the boundaries of the City of San Marcos, Texas.@ *Id.* at 646. Conceding the notice wasAnot as clear as it might be,@the court nevertheless held that the notice was adequate becauseAit would alert a reader to the fact that some action would be considered with respect to charges for electric power sold in San Marcos.@ *Id.*

Two years later, in *Texas Turnpike Authority v. City of Fort Worth*, 554 S.W.2d 675 (Tex. 1977), the court considered the notice for a meeting of the board of directors of the Texas Turnpike Authority at which a resolution was passed to enlarge the Dallas-Fort Worth Turnpike. *Id.* at 676. The notice stated the board would Aconsider request . . . to determine feasibility of a bond issue to expand and enlarge the Dallas-Fort Worth Turnpike.@ *Id.* The City asserted the notice should have stated that this course of action was contrary to the board=s prior declaration of its intention to make the Turnpike a toll free road. The court upheld the notice, pointing out thatAthere is no necessity to post copies of proposed resolutions or to state all of the consequences which may necessarily flow from the consideration of the subject stated.@ *Id.*

In *Cox Enterprises, Inc. v. Board of Trustees of the Austin Independent School District*, 706 S.W.2d 956 (Tex. 1986), the board of trustees of a school district posted notices of their closed executive sessions that listed only general topics such as Apersonnel,@Alitigation,@ and Areal estate matters.@ *Id.* at 957. The court concluded that theAadvance notice given under [the Open Meetings Act] should specifically disclose the subjects to be considered at the

16

upcoming meeting.@ *Id.* at 959. The court held that the board Adid not provide full and adequate notice, particularly where the subject slated for discussion was one of special interest to the public.@ *Id.*

In *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762 (Tex. 1991), a citizen challenged the city=s condemnation of his land on the ground that the city=s posting did not describe the particular land to be condemned. The notice posted in advance of the city council meeting stated that the city would address an ordinance Adetermining the necessity for and authorizing the condemnation of certain property in County Blocks 4180, 4181, 4188, and 4297 in Southwest Bexar County for the construction of the Applewhite Water Supply Project.@ The court held the city Acould have given more particularized notice,@ but this notice was Asufficient to ensure that a reader was given adequate notice of the proposed governmental action.@ *Id.* at 765-66.

Applying the supreme court=s rulings about the purpose of giving notice to the public, we hold that the Authority=s notice is adequate. The supreme court has held notices to be sufficiently descriptive that alerted readers to the particular issue the governing bodies would address—changes in electric power rates, the enlargement of the Dallas-Fort Worth turnpike, and condemnation of land located in a specific area of Bexar County. Although we agree that the Authority=s notice is not as clear as it might be, we believe that the notice is sufficient to give adequate notice to the public and certainly more descriptive than, for example, the broad topics held to be inadequate in *Cox Enterprises*. The Authority notified the public that it would consider a AWater Purchase Contract among@ a list of entities, including the

17

Authority, and AOutline of Preliminary Agreement concerning joint participation in a treated water supply for portions of@ three particular counties.[10]

The notice here is substantially more descriptive than the posting in *Hays County Water Planning Partnership v. Hays County*, 41 S.W.3d 174 (Tex. App.CAustin 2001, pet. denied), a recent case in which this Court held APresentation by Commissioner [name]@ to be inadequate notice concerning the detailed plan of the precise roads and infrastructure that the Commissioner proposed to permit real estate development in Hays County. We concluded that the notice failed to convey Aany inkling of the *substance* of [the commissioner=s] proposed presentation.@ *Id.* at 180 (emphasis in original). The notice provided by the Authority in advance of its August 20, 1997 meeting cannot be said to lack an Ainkling@ of the meeting=s substance. Even though these descriptions might not inform the casual reader of the precise consequences of the AWater Purchase Contract@ and AAgreement concerning joint participation in a treated water supply,@ we invoke the supreme court=s observation that Athere is no necessity . . . to state all of the consequences which may necessarily flow from the consideration of the subject stated.@ *Texas Tpk. Auth.*, 554 S.W.2d at 676.

---

[10] FOCL complains that the notice in no way reflects the final action taken at the meeting, which it alleges was to, among other things, Asell a portion of the water outside its ten county area . . . .@ We note that this claim is made despite the fact that the notice clearly lists Bexar County among the counties considered for the treated water supply.

In *City of San Antonio*, the court recognized that the notice at issue was Ainsufficient to inform the individual landowners that their particular tracts of land were the subject of the proposed condemnation ordinance.@ *City of San Antonio*, 820 S.W.2d at 765-66. Nonetheless, the court held that it was adequate to achieve the Act=s Acore purposes.@ *Id.* The court explained: AThe intended beneficiaries of the [Open Meetings] Act are not individual citizens, such as the particular landowners affected by this condemnation, but members of the interested public. If a >reader= is given notice, the requirement of the Act is satisfied and its purpose served.@ *Id.* Like the notice in *City of San Antonio*, the Authority=s notice satisfied the Act=s Acore purposes@ because it informed a reader as a member of the interested public of the topics to be addressed at the board meeting. While it could have provided more, the detail in the notice was adequate to hold that the Authority did not violate the Act.[11] We therefore overrule appellant=s issue.

---

[11] On appeal, FOCL complains about the notice for a board meeting held by the Authority on October 16, 1996. It contends that Athe certificate of authority to file the application for amendment of permit filed by [the Authority=s] general manager on August 29, 1997 indicates he was given authority to file the application at the August 20, 1997 [Authority] Board meeting, not the October 16, 1996 Board meeting.@ FOCL also contends that the language of the notice, Aincrease yield of Canyon Reservoir,@ does not adequately satisfy the Act. However, as suggested by FOCL, the Application was filed pursuant to the 1997 Board meeting. Having concluded that the 1997 meeting satisfied the Act, we need not address the 1996 meeting.

Even if we were to conclude that the notice was inadequate, we question how FOCL would then be able to attack the TNRCC Amendment. As the Authority points out, FOCL seeks to invalidate the TNRCC Amendment by attacking the validity of the Application leading to the Amendment. FOCL alleges that the Application filed with the TNRCC by another agency was improperly approved pursuant to the other agency=s Open Meetings Act violation. But this reasoning conflicts with the well established principle that an agency=s final order, like the final judgment of a court of law, is immune from collateral attack. *See Alamo Express, Inc. v. Union City Transfer*, 309 S.W.2d 815, 827 (Tex. 1958) (collateral attack on Railroad Commission order impermissible because administrative statutes provided sole method of attack); *see also State v. Triax Oil & Gas, Inc.*, 966 S.W.2d 123, 126 (Tex. App.CAustin 1998, no pet.).[12] Exceptions to this general rule excluding collateral attacks are limited. *Texas Dep=t of Transp. v. T. Brown Const.*, 947 S.W.2d 655, 659 (Tex. App.CAustin 1997, pet. denied).

---

[12] It is undisputed that the Amendment constitutes a final agency order.

We have already determined that the TNRCC did not act beyond its statutory authority by issuing the Amendment. And FOCL has made no attempt to prove that the Amendment is in some manner fundamentally flawed. Rather, and as we understand its argument, FOCL claims to be making a *direct* attack on the Amendment, claiming the Authority=s violation of the Act in approving the Application at an improper meeting causes the TNRCC=s Amendment to be void. This contention overlooks the express language of the Act, which states that Aan action taken by a governmental body in violation of this chapter is voidable.@ Tex. Gov=t Code Ann. ' 551.141 (West 1994). In the context of this case, we take this language to mean that, at best, FOCL could ask this Court to set aside the voidable action taken by the Authority at its August 20, 1997 meeting.[13] If we were to do that, however, the Amendment itself would still stand. The Act does not provide an exception to the rule against collateral attack on final agency orders. *See, e.g.*, *Carr v. Bell Sav. & Loan Ass=n*, 786 S.W.2d 761, 765 (Tex. App.CTexarkana 1990, writ denied).[14] Invalidating the Application based on the Authority=s actions would not provide a method of

---

[13]     Section 551.142 of the Act states in part that an interested person Amay bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body.@ Tex. Gov=t Code Ann. ' 551.142(a) (West 1994).

[14]     In *Carr,* the appellant attacked the decision of one agency, the Appraisal Review Board, based on deficiencies in meeting notices sent by another agency, the Central Appraisal District. The court held that by the terms of the Open Meetings Act, this was a collateral attack. The court wrote:

> Assuming that [Carr] could qualify as an Ainterested person@ within the Open Meetings Act, he could attack an action of a governmental body for violations of the Act only directly, not collaterally. The Act provides that any action taken by such a body in violation of the Act is only voidable, not void.

*Carr v. Bell Sav. & Loan Ass=n*, 786 S.W.2d 761, 765 (Tex. App.CTexarkana 1990, writ denied).

21

direct attack on the Amendment, which FOCL admits is a final order by an altogether separate governmental body.

*Discovery Requests*

FOCL finally argues that the district court erred by denying its discovery requests with the TNRCC. According to FOCL, these discovery requests were relevant because they were directly linked to the claims dismissed by the district court for lack of subject-matter jurisdiction. We note that this complaint is not shown in the brief as an Aissue presented@ but instead is raised for the first time only in discussion at the end of the brief. Nor does the argument cite any authority. The brief on this point submitted by appellant is therefore not in accordance with Tex. R. App. P. 38.1(e), (h). Also, because we have affirmed the dismissal of those claims, we need not further address this issue; to the extent the matter is asserted, we overrule the complaint.

## CONCLUSION

For the reasons set forth above, we overrule FOCL=s issues on appeal. We affirm the judgment of the district court.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Patterson and Puryear

Affirmed

Filed:   October 31, 2002

Publish