Opinion filed June 28, 2007



















 
 
  
 
 







 
 
  
 
 




Opinion filed June 28, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                           No. 11-05-00368CV 

                                                    __________

 

                                        HARDY RAWLS, Appellant

 

                                                             V.

 

           TEXAS
COMMISSION ON ENVIRONMENTAL QUALITY AND 

                                CAJUN
READY MIX, LTD., Appellees

 



 

                                         On
Appeal from the 200th District Court

 

                                                          Travis County,
Texas

 

                                               Trial
Court Cause No. GN4-03681 

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

Hardy Rawls filed suit against Texas Commission on
Environmental Quality (TCEQ) and Cajun Ready Mix, Ltd. seeking judicial review
of a concrete batch plant permit.  The
trial court granted TCEQ’s and Cajun’s pleas to the jurisdiction and dismissed
Rawls=s suit.  We affirm.








                                                             I.  Background Facts

Cajun filed a standard permit registration with
TCEQ for a concrete batch plant to be located in Montgomery, Texas.[1]  The standard permit application process is a
simplified permitting process for typical plants.  30 Tex.
Admin. Code ' 116.602
(2007).  To qualify, the proposed plant
must produce less than 300 cubic yards of concrete per hour, less than 30 cubic
yards of specialty material per hour,[2]
or be a temporary plant.  The plant must
have certain required filter and collection equipment, conveying systems, and
warning devices; must utilize specified dust control measures; and must
maintain a set distance from the property line or use dust suppression fencing.

On May 3, 2004, TCEQ declared Cajun=s application administratively complete
and directed it to provide public notice of the pending application.[3]  Cajun published notice in two local
newspapers on May 27, 2004.  Cajun’s
notice indicated that the public could submit comments or request a public
meeting and that individuals residing within 440 yards of the proposed plant
could request a contested case hearing. 
The notice also provided that, if no hearing was requested within
fifteen days, TCEQ could approve the application and that no further
opportunity for hearing would be provided.

Rawls did not timely request a contested case
hearing, but TCEQ scheduled a public meeting for August 16, 2004.  Rawls=s
counsel appeared and submitted a letter with comments in opposition to Cajun’s
application, a report from Hunt Air Strategies, and a hand-written request for
a contested case hearing.  The Hunt report
stated that, when the cumulative PM10 emissions from Cajun’s plant
and a neighboring asphalt plant were added to background PM10 levels
in Montgomery County, the total could exceed the
applicable National Ambient Air Quality Standard (NAAQS).[4]









TCEQ determined that Cajun’s application met the
standard permit requirements and permitted the construction and operation of
the proposed concrete batch plant.  Rawls
filed a motion for reconsideration that was overruled by operation of law.  Rawls then filed suit in state court against
TCEQ and Cajun.  They responded with
pleas to the jurisdiction.  The trial
court granted the pleas and dismissed the litigation.

                                                                       II.  Issues

Rawls challenges the trial court’s ruling with
three issues.  Rawls contends that the
trial court  had jurisdiction because he
exhausted his administrative remedies before filing suit, that it was unnecessary
to do so because his suit presented a question of pure law, and that Cajun’s
plant was ineligible for a standard permit.

                                                           III.  Standard of Review

A plea to the jurisdiction challenges a trial
court=s
authority to determine the subject mater of the suit.  Godley Indep. Sch. Dist. v. Woods, 21
S.W.3d 656, 658 (Tex. App.CWaco
2000, pet. denied).  Jurisdiction is a
question of law and, therefore, we review the trial court=s ruling de novo.  State ex rel. State
Dep=t of
Highways and Pub. Transp. v. Gonzalez, 82 S.W.3d 322 (Tex. 2002). 
A plaintiff must plead facts that affirmatively show the trial court’s
jurisdiction.  Tex. Ass=n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). 
We take the jurisdictional allegations in the petition as true, and we
construe them liberally in favor of the plaintiff.  Tex.
Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). 
We do not look to the merits of the case, but consider only the
pleadings and evidence relevant to the jurisdictional inquiry.  Id.
at 227.

                                                                     IV.
Analysis

A. Did Rawls Exhaust His Administrative
Remedies? 

It is well settled that a party must exhaust its
administrative remedies before seeking judicial review of a decision within the
exclusive jurisdiction of an administrative agency.  See Thomas v. Long, 207 S.W.3d 334,
340 (Tex.
2006).  The Austin Court has held that not requesting
a contested case hearing constitutes a failure to exhaust administrative
remedies.  See Friends of Canyon Lake,
Inc. v. Guadalupe-Blanco River Auth., 96 S.W.3d 519, 526-27 (Tex. App.CAustin 2002, pet. denied).








Rawls does not dispute that TCEQ has exclusive
jurisdiction over standard permits, and he concedes that he did not request a
contested case hearing within fifteen days of Cajun’s notice.  However, he contends that TCEQ reopened the
administrative record when it held the August 16 public meeting; that it
invited Rawls to request a contested case hearing at this meeting; and that,
because he did so and because he also filed a motion for reconsideration when
TCEQ granted Cajun’s application, he exhausted his administrative remedies.

Rawls’s characterization of the effect of TCEQ’s
decision to hold a public meeting is inconsistent with the statutory provisions
governing public meetings and contested case hearings.  These provisions make clear that the two are
separate, distinct processes which serve different purposes.  For example, 30 Tex. Admin. Code '
55.154(a) (2007) provides that “[a] public meeting is intended for the taking
of public comment, and is not a contested case under the APA.”  Tex.
Health & Safety Code Ann. '
382.05199(f) (Vernon Supp. 2006) provides that “Section 382.056 of this Code
and Chapter 2001, Government Code, do not apply to a public hearing held under
this section.”  By excluding Chapter
2001, the legislature exempted public meetings from compliance with a wide
variety of procedural requirements such as following evidentiary rules[5]
and the obligation to provide parties with an opportunity to cross-examine
witnesses,[6]
to present witnesses and argument on each issue,[7]
or to conduct discovery.[8]








Not only are the procedures distinct, the right to
participate as a party in a contested case hearing and the right to offer
comment at a public meeting are quite different.  A party must have standing to request a
contested case hearing.  This generally
requires a personal justiciable interest not common to members of the general
public and is limited to individuals who would be affected by the emissions
that would result if the permit were granted. 
See United Copper Indus. Inc., v. Grissom, 17 S.W.3d 797, 802
(Tex. App.CAustin
2000, pet. Dism’d).  For standard concrete
batch  plant permits, this is statutorily
defined as individuals residing in a permanent residence within 440 yards of
the proposed plant.  Tex. Health & Safety Code Ann. ' 382.058(c) (Vernon Supp. 2006).  No such restriction exists for public
meetings.  See Section
382.05199(f) (“Any person may submit an oral or written statement concerning
the application at the public hearing”). 


These contrasting provisions indicate that the
legislature created contested case hearings to 
administratively resolve, in a structured setting, disputed questions of
fact and law between parties with standing, and that it intended for public
meetings to provide the general public an informal opportunity to participate
in the administrative decision-making process. 
Cajun properly notified Rawls of his right to request a contested case
hearing.  He did not do so and,
therefore, did not take advantage of his opportunity to adjudicate any
contested issues.  The August 16 public
meeting was not a substitute for a contested case hearing.  Instead, it provided Rawls B as well as any other member of the
general public B an
opportunity to comment on Cajun’s application. 
Because the two processes are by design dissimilar and serve disparate
purposes, we cannot agree that TCEQ’s decision to hold a public meeting revived
Rawls’s right to request a contested case hearing.

Nor did TCEQ’s conduct otherwise create jurisdiction
or excuse Rawls’s failure to exhaust his administrative remedies.  We note first that jurisdiction cannot be
created by estoppel or waiver.  See
Van Indep. Sch. Dist. v. McCarty, 165 S.W.3d 351, 354 (Tex. 2005). 
Second, the TCEQ representative’s comments cannot be fairly described as
reopening the application review process. 
During the public hearing, the following exchange took place:

COUNSEL
FOR RAWLS:  Frankly, I asked for an
extension of time so that we could put together a better set of comments.  I was told there would be no extensions of
time.  I want to complain at this point
about the due process issues associated with, one, a fifteen day period to
request a contested case hearing.  That’s
where this issue should have gone, was to contested case.  But nobody in this town found out about it
soon enough to request a contested case because the notice was
insufficient.  If we’d had a contested
case proceeding, I could have put this evidence on before a State Office of
Administrative Hearings Administrative Law Judge.  I’ve been C
my clients have been denied the right to do that.  I request a contested case hearing at this
point in time on the basis of the documentation that was submitted just for the
record to make the request.  That’s the
mechanism that we have to protect life and to protect property.  And it’s been denied the people here and it’s
a violation of due process.  Thank you
very much.

 








TCEQ:  Thanks, Jim. 
Hey, Jim, that hearing request is in your written comments that you
handed to me?

 

COUNSEL
FOR RAWLS: No, I did not.  That’s an oral
request that backs it up.  But I am
orally requesting a contested case hearing.

 

TCEQ: OK, why don’t I get you to put it on here for me.

 

COUNSEL FOR RAWLS: Would you like me to C

 

TCEQ:  C write it on here for me.

 

COUNSEL FOR RAWLS: I will submit it in writing.

 

TCEQ: OK.

 

COUNSEL
FOR RAWLS: And make a specific request for a contested case hearing on the
basis of the evidence that we have here.

 

TCEQ: OK, Thanks Jim. 
Appreciate it. 

 

The TCEQ representative did not solicit a request for a contested
case hearing or otherwise extend the deadline for doing so.  He simply asked Rawls to reduce his oral
request to writing.








Rawls contends that the public meeting had no
purpose if not to reopen the administrative record.  We disagree. The meeting provided the general
public B free of
any standing requirement B
with an opportunity to informally dialogue with TCEQ concerning Cajun’s
application.  The public was given the
opportunity to share their comments, to hear the comments and concerns of
others, and to receive TCEQ’s subsequent written response.  Furthermore, TCEQ’s executive director was
statutorily required to consider these comments when evaluating Cajun’s
application.  See Section
382.05199(h).[9]  TCEQ’s executive director did provide a
written response to the comments received at the public meeting B including Rawls’s contention that the
combination of Cajun’s plant and an adjacent asphalt plant would exceed the
NAAQS for PM10.[10]  The meeting, therefore, served the purpose
intended for it by the legislature.

The trial court correctly found that Rawls failed
to exhaust his administrative remedies. 
Issue one is overruled.

B.  Pure
Question of Law.

Rawls next contends that his claim presents a pure
question of law and, therefore, is not subject to the exhaustion of
administrative remedies requirement.  The
State responds that this exception is inapplicable because it only applies to
litigation filed before a final agency order. 
Rawls does not dispute this limitation, but he argues that he satisfied
it by participating in the public meeting before TCEQ issued a final
order.  We disagree.  The exact dimensions of this doctrine are
uncertain.  It can, in appropriate
circumstances, be used to seek injunctive relief preventing a void act.  See, e.g., Benavides Indep. Sch. Dist. v.
Guerra, 681 S.W.2d 246, 248-49 (Tex. App.CSan
Antonio 1984, writ ref=d
n.r.e.) (principal allowed to seek injunction without exhausting all
administrative remedies when there were no unresolved fact questions).  But, the mere characterization of a dispute
as a legal issue is insufficient to invoke the doctrine.   See, e.g., MAG-T, L.P. v. Travis Cent.
Appraisal Dist., 161 S.W.3d 617, 635 (Tex. App.CAustin
2005, pet. denied).  We need not decide
today what is covered by the question of law exception, for it is clear that
Rawls may not use it to collaterally attack TCEQ’s decision to permit Cajun’s
plant.








The Texas Supreme Court acknowledged the question
of law exception in Grounds v. Tolar Indep. Sch. Dist., 707 S.W.2d 889,
892 (Tex.
1986), but held that it does not apply to all legal determinations.  In Grounds, a teacher/football coach
was nonrenewed.  He filed a grievance,
lost, and appealed to the Commissioner of Education.  The Commissioner found for Grounds and
ordered the school district to re-employ him in the same professional
capacity.  The school district did not
file a motion for rehearing or appeal the Commissioner’s decision to a Travis County
district court.  Instead, it filed a
declaratory judgment action in Hood
 County.  The school district claimed that it was not
required to exhaust its administrative remedies prior to filing suit because
the case involved a pure question of law: was Grounds a probationary employee?  The court held that the exception was
inapplicable because the Commissioner had the authority to determine a teacher=s rights under the Term Contract
Nonrenewal Act[11]
and that, therefore, whether a subsequently adopted probationary policy could
be applied to Grounds’s employment contract was not a pure question of
law.  Id.

The construction of an unambiguous contract is
ordinarily considered a question of law.  
See MCI Telecomms. Corp. v. Tex.
Utils. Elec. Co., 995 S.W.2d 647, 650-51 (Tex. 1999). The application of a statute to
a contract would, therefore, appear to present a question of law.  But the Austin Court has explained Grounds
by writing: “questions dedicated to an administrative agency as part of its
exclusive jurisdiction in a statutory scheme to interpret are not subject to
collateral attack in district court without first exhausting the administrative
remedies provided in the statutory scheme, even if the aggrieved party
characterizes the question as a ‘pure questions (sic) of law.’”  MAG-T, 161 S.W.3d at 635 (because
taxing authority had exclusive jurisdiction to interpret and act under an
amnesty provision, its application of that statute could not be collaterally
attacked under the pure question of law exception).

Rawls contends that TCEQ violated Section
382.05195 and 30 Tex. Admin. Code '' 101.21, 116.111(a)(2), 116.161 (2007)
when it permitted Cajun’s plant because the plant’s PM10 emissions
may exceed state and federal law. 
However, TCEQ has exclusive jurisdiction to interpret and apply these
statutes.  Moreover, TCEQ=s decision is final. Rawls’s challenge,
therefore, is a collateral attack on that decision.  Because the question of law exception may not
be used to collaterally attack an agency’s interpretation and application of
the statutes within its exclusive jurisdiction, it is inapplicable to this
case.  See Friends of Canyon Lake,
96 S.W.3d at 528 (whether TRNCC correctly complied with all the intricacies of
the water rights permit application process did not confer jurisdiction under
the question of law exception).








The exception is also inapplicable because the
facts are unresolved.[12]  Rawls does not contend that Cajun’s plant
will definitively result in a NAAQS violation, but claims that it “may violate
the 24 hour NAAQS for PM10.”[13]  Rawls’s ultimate goal may be to permanently
block the construction and operation of Cajun’s plant, but he is not seeking
that result in this litigation.  His
contention is that TCEQ should order further study because Cajun’s plant is not
a stand-alone facility due to the presence of an adjacent asphalt plant.  Rawls’s contention implicates, rather than
excludes, the exhaustion of administrative remedies doctrine because he was
afforded an opportunity to request a contested case hearing to determine the
facts and law necessary to resolve issues such as these.

Rawls’s second issue is overruled.  Because we have found that Rawls failed to
exhaust his administrative remedies and that no exception to this requirement
applies, it is unnecessary to address his third issue.[14]  Tex.
R. App. P. 47.1.

                                 V. Holding

The judgment of the trial court is affirmed.

 

 

RICK
STRANGE        

JUSTICE

 

June 28, 2007 

Panel
consists of: Wright, C.J., 

McCall,
J., and Strange, J.











[1]See Tex. Health & Safety Code Ann. '' 382.05195 (standard permit), 382.05198 (concrete batch
plants) (Vernon Supp. 2006).





[2]I.e., mortar,
grout mixing, or pre-cast concrete products.





[3]See Tex. Health & Safety Code Ann. ' 382.05199 (Vernon Supp. 2006) for the notice
requirements.





[4]In 1970, Congress directed the EPA to devise National
Ambient Air Quality Standards that limited various pollutants.  See Envtl. Defense v. Duke Energy Corp.,
__U.S. __, 127 S.Ct. 1423, 1428, 167 L.Ed.2d 295 (2007).  These pollutants include  PM10 which is airborne particulate
matter consisting of solids or liquid droplets with an aerodynamic diameter of
10 microns or less.  Available at
http://www.epa.gov/cgi-bin/epaprintonly.cgi





[5]Tex. Gov=t Code Ann. ' 2001.081 (Vernon 2000).





[6]Tex. Gov=t Code Ann. ' 2001.087 (Vernon 2000).





[7]Tex. Gov=t Code Ann. ' 2001.051 (Vernon 2000).





[8]Tex. Gov=t Code Ann. ' 2001.091 (Vernon 2000).





[9]It is unnecessary for us to determine the extent of the
executive director=s duty to Aconsider@ comments received at a public meeting and we express
no opinion on it.





[10]The executive director responded:

 

Concrete batch plants as well as asphalt plants are considered minor
sources whose strict emission control standards make it unlikely for such
facilities to impact ambient air quality. 
Standard permits which authorize minor sources are not expected to cause
or contribute to a NAAQS violation.  The
annual emissions of this facility will be 0.48 tons of TSP of which 0.32 tons
will be PM10.  Currently, the Montgomery County meets the NAAQS for PM.@ 





[11]Tex. Educ. Code Ann. '' 21.201-213 (Vernon 2006).





[12]See Dotson v. Grand
 Prairie Indep. Sch. Dist., 161 S.W.3d 289, 291-92 (Tex. App.CDallas 2005, no pet.); Taylor v. State Farm Lloyds,
Inc., 124 S.W.3d 665, 669 (Tex. App.CAustin
2003, pet. denied).





[13]TCEQ=s executive director has stated that the plant is
unlikely to impact ambient air quality.  





[14]We note that the trial court also included in its order
granting the pleas to the jurisdiction a statement affirming TCEQ=s decision. 
Because the trial court properly found that Rawls failed to exhaust his
administrative remedies, it had no jurisdiction to do anything other than
dismiss the suit.  Our resolution of this
appeal makes it unnecessary to address this any further.