# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00113-CV

**Kyle Janek, M.D., Successor to Thomas Suehs, in his Official Capacity as Executive Commissioner of the Texas Health and Human Services Commission, Appellant**

**v.**

**Octavia Gonzalez, Dulce Hernandez, Amalia Guedea-Nelson, Laura Guzman, S.J.M., N.L.T., Laura Campa, Celila C. Blake, Alice Chacon, Jessica Garza, Jesse R. Gill, Estella Guzman, Tracie Lee Hutchinson, Liliana Lara, Jeannette M. Lopez, Anna B. Meza, Patricia A. Mitchell, James E. Oliver, Maria Victoria Oliveras, Cecilia D. Ordonez, Juana H. Quinones, Carmen Rojas, Agapitus A. San Nicolas, Robert Santana, Megan Self, Meghean E. Springle, Esther Angel Valadez, Maria de Jesus Valenzuela, Kathy Zavala, Violeta G. Zepeda, Ofelia Marroquin, Veronica Castro-Cadena, San Juana Franco, Valerie Nicole Garcia, Consuelo Garza, Dottie Gavin, Rosalinda Guerrero, Elisa J. Major, Consuelo Maldonado, Gloria M. Olivarez, Eva Marie Korsos, Dora Elia Ramos, Grace Rocha, Diana Brister, India Bloom, Tina Brooks, Fatinah M. Curry, McKay Keithley, Mary Jones, Fabiola E. Trigos, Brandon Sinclair, Anthony Cornelius, La Union Del Pueblo Entero, Proyecto Juan Diego, Family Crisis Center of Big Bend, Mamas of Color Rising, and Lone Star Legal Aid Client Council, Appellees[1]**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-09-004273, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The Applicants sought aid under the Supplemental Nutrition Assistance Program (the "Program"), which is also commonly referred to as the Food Stamp Program. Alleging delays in receiving benefits and other procedural errors, the Applicants filed suit against the Commissioner

---

[1] For ease of reading, we will refer to the appellees jointly as the "Applicants."

of the Texas Health and Human Services Commission (the "Commissioner"). In their suit, the Applicants asserted that the Commissioner was not complying with various requirements listed in the statutory and regulatory scheme governing the Program. The Applicants sought several declarations regarding the Commissioner's allegedly improper actions as well as temporary and permanent injunctive relief. In response to the Applicants' suit, the Commissioner filed a plea to the jurisdiction asserting that the Applicants' suit was barred by sovereign immunity. After conducting a hearing, the district court denied the plea. The Commissioner appeals the district court's ruling on the plea, and we will reverse the ruling by the district court and remand the case for further proceedings.

## BACKGROUND

The dispute in this appeal stems from alleged delays in receiving aid under the Program. The Program was established "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C.A. § 2011 (West 2010). In effect, the Program is intended to allow "low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." *Id.* The Program is implemented through a partnership between the federal government and state governments under which the federal government provides funding for the benefits and pays one-half of the administrative costs and under which the State pays "the other half of the administrative costs." 1 Tex. Admin. Code § 372.5 (2011). Under the partnership, the Texas Health and Human Services Commission (the "Commission")[2] develops the State plan,

---

[2] The Commission was not named in the notice of appeal and is not an appellant in this case. Originally, the Applicants named the Commission as well as the Commissioner in their law suit, but

2

"certifies eligible individuals," and "provides the benefits," and the United States Department of Agriculture, Food and Nutrition Service approves the plan adopted by the State, "provides guidance and regulations," "monitors the operation of the program," and "authorizes and manages food retailers." 1 Tex. Admin. Code § 372.6(b) (2011); *see* 7 U.S.C.A. § 2020(a), (d), (e) (West 2010) (outlining responsibilities of states participating in Program and requiring states to submit for approval plan establishing manner in which Program will be conducted in their state); *see also* Tex. Hum. Res. Code Ann. § 33.002 (West Supp. 2011) (stating that Commission is responsible for distribution of commodities and food stamps allocated from federal government and empowering Commission to establish rules ensuring widest distribution to eligible individuals).

Under the authority bestowed by the Texas Legislature, the Commission generally incorporated into its rules the federal regulations pertaining to the Program "[t]o the extent the regulations . . . impose federal mandates that apply to Texas." *See* 1 Tex. Admin. Code § 372.3(d), (e) (2011) (incorporating parts 271 through 283 of title seven of code of federal regulations unless regulations allow options from which Texas may choose or unless Texas has been granted waiver from federal mandate). In addition to generally incorporating the federal requirements, the Commission specifically incorporated the requirements of particular federal regulations. *See, e.g.*, *id.* § 372.1001(b) (2011) (adopting notice provisions contained in subsections 273.10(g)(1) and (g)(2) found in title seven of code of federal regulations).

---

the Applicants admit on appeal that the Commission was a proper party for only one of the causes of action listed in their petition, *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009) (explaining that for claims seeking to restrain actions that allegedly violate or exceed statutory authority, suit may not be brought against agency and must instead be brought against state actors in their official capacities), and state that they are no longer pursuing that cause of action and will, therefore, amend their pleadings and dismiss the Commission from the suit if the case is remanded to the district court because the Commission "is no longer a proper defendant."

3

The Applicants in this case filed suit against the Commissioner in his official capacity. In their petition, the Applicants listed individual residents who "have applied for, are applying for, or intend to reapply" for assistance under the Program. In addition, the Applicants generally asserted that some of the individual plaintiffs did not receive a decision regarding their applications within the time provided by law, that some of the plaintiffs wrote to the Commissioner and demanded that he make decisions on their applications, and that after receiving the written demand, the Commissioner made decisions regarding "many of these plaintiffs" and either granted them benefits, determined that they had not provided enough information in order to receive benefits, or denied the applications. Also, the Applicants urged that after various plaintiffs wrote to the Commissioner, the Commissioner informed them that a decision had already been made in many of the cases, that many of the applications had been approved, and that some applications had been denied because they did not contain sufficient information. Further, the Applicants alleged that the Commissioner did not send legally required notices to some of the plaintiffs. Specifically, they contended that the Commissioner was obligated to but was failing to issue notices setting out the basis for his decision to grant or deny benefits, specifying the amount of benefits that applicants were entitled to, asking for further information to aid in processing the requests, and informing applicants when their requests were being delayed. The Applicants also contended that some of the plaintiffs "have applications that are still pending or on appeal with" the Commissioner.

In addition to these general allegations, the Applicants' petition also included a section setting out the "STORIES OF FIVE INDIVIDUAL PLAINTIFFS." In that section, the Applicants described the experiences of McKay Keithley, Liliana Lara, Alice Chacon, India Bloom,

4

and S.J.M. and alleged various ways in which the individuals' attempts to obtain benefits were frustrated by a variety of procedural errors. The individuals' complaints differed as did their responses to the allegedly improper actions by the Commissioner.

Regarding Keithley, the Applicants asserted that the Commissioner denied Keithley's application on the ground that he failed to provide all of the information needed and further contended that the Commissioner later stated that he would reconsider the application if Keithley provided the requested information. Although the Applicants alleged that Keithley appealed the denial of his benefits, the Applicants also stated that Keithley refused to comply with the Commissioner's request for more information because the Commissioner would use "the date he provided the mystery information as his application date" and would be absolved of failing to initially process the application in a timely manner.

Next, the Applicants insisted that Lara did not receive benefits after dropping off her application, that the Commissioner eventually informed her months after she requested benefits that her application had been denied previously, that Lara ultimately appealed the denial of her benefits, that she "is currently waiting for a fair hearing on the appeal," and that Lara filed another application for benefits for a different certification period and was ultimately awarded those benefits. Even though Lara had been receiving benefits, the Applicants contended that she never received "written notice regarding her eligibility for [those] benefits, which would include an explanation of the basis for the benefits and the date the benefits expire."

In the Applicants' petition, they also described the difficulties that Chacon experienced obtaining benefits and alleged that months after Chacon applied for benefits, she was told to provide

5

additional information. Further, the Applicants contended that she provided the requested information, that she sought legal advice, that her attorney sent a demand letter to the Commissioner, and that the Commissioner subsequently related that her request for benefits had been denied months earlier. In addition, the Applicants explained that Chacon later appealed the denial of her application and was eventually awarded benefits and that Chacon filed an additional application for a new certification period and was awarded benefits under the new application as well; however, the Applicants related that the Commissioner never provided her with the required written notice describing the benefits that she was awarded under the second certification.

Regarding Bloom, the Applicants alleged that she was initially awarded benefits for six months but was later informed by the Commissioner that she should only have been given benefits for three months. Further, the Applicants related that Bloom appealed that determination and had her benefits reinstated but that when she applied for a new certification period, she received a letter stating that her benefits had been denied. In addition, the Applicants explained that Bloom appealed the denial of her benefits and that her appeal was pending at the time this suit was filed.

Finally, the Applicants described how another individual, S.J.M., also applied for benefits and was ultimately awarded benefits but related that the Commissioner took months to approve the benefits.

In addition to chronicling the stories of five individual plaintiffs, the Applicants also included a section discussing the organizational plaintiffs that are listed in the style of this case: La Union del Pueblo Entero, Proyecto Juan Diego, Family Crisis Center of the Big Bend, Mamas of Color Rising, and Lone Star Legal Aid Client Council.

6

According to the Applicants, La Union is a charitable corporation helping low-income individuals, and many of the individuals that La Union assists have applied for benefits from the Program. Further, the Applicants asserted that some members of La Union have been forced to wait for a decision regarding benefits "beyond the time allowed by state law," that members have improperly been denied benefits, that members have not been given adequate notice regarding their status, and that individuals receiving benefits under the Program have been denied benefits even though they are still eligible because of delays in processing their recertification applications.

Regarding Proyecto Juan Diego, the Applicants asserted that the organization is a charitable corporation that "provides social, health, and educational services" and alleged that members of Proyecto have confronted "problems of delay, notice, illegal processing, and illegal denial of benefits."

Similarly, the Applicants contended that the Family Crisis Center of the Big Bend is a charitable corporation that provides food to needy families and that several of those families have had their benefits "delayed or illegally denied" by the Commissioner.

Regarding Mamas of Color Rising, the Applicants explained that the collective focuses on helping its members gain access to food, housing, education, and safety and urged that members of Mamas have experienced "delays in getting decisions and benefits."

Finally, the Applicants discussed Lone Star Legal Aid Client Council and insisted that the Commissioner's actions have caused the Client Council to "redirect their usual efforts of assisting the Lone Star Legal Aid client population broadly to instead focusing efforts primarily on helping people maneuver" through the contours of the Program. In particular, the Applicants argued that the Client Council has had to provide assistance when applications "were not resolved for

months," when proper notices "were not sent," when payments "were not made," and when benefits were "not continued for a recertification because of agency error, omission, and incompetence."

In light of the allegations in their petition, the Applicants claimed that the Commissioner was not making eligibility decisions in the time required by law, that the Commissioner's approval process was improper, that the Commissioner was not providing assistance to people who file for benefits, that the Commissioner was not issuing benefits within the time required by law, and that the Commissioner did not continue to provide benefits to people while he determined whether to recertify those individuals as eligible to receive aid.[3] After listing these causes of action, the Applicants requested a declaration that the Commissioner's "operations, practices, and policies . . . violate state law." Further, the Applicants asked the district court to grant "mandamus as well as temporary and permanent injunctive relief to require [the Commissioner] to develop operations, practices, and policies that comply with Texas law."

In response to the Applicants' petition, the Commissioner filed a plea to the jurisdiction asserting that the district court could not consider the claims raised because the case was barred by sovereign immunity. The district court denied the plea to the jurisdiction, and the Commissioner appeals the district court's denial.

## STANDARD OF REVIEW

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*,

---

[3] In their petition, the Applicants also alleged causes of action regarding whether the governing rules were inconsistent with the statutory requirement of ensuring the widest distribution of benefits, whether the phone system used by the Commissioner improperly prevented individuals seeking aid from contacting caseworkers, and whether the practices employed actually deprived people "of their right to due course of law under the Constitution of the State of Texas." In their appellate brief, the Applicants concede that they are no longer pursuing these causes.

8

34 S.W.3d 547, 554 (Tex. 2000). The purpose of a plea "is not to force the plaintiff to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Id.* Pleas to the jurisdiction asserting sovereign immunity challenge a trial court's subject-matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Subject-matter jurisdiction is a question of law that appellate courts review de novo, *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007), and may be raised for the first time in an interlocutory appeal, *Rusk State Hosp. v. Black*, No. 10-0548, 2012 Tex. LEXIS 731, at \*15-16 (Tex. Aug. 31, 2012). Moreover, appellate courts must consider their jurisdiction "even if that consideration is sua sponte." *Freedom Commc'ns., Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012) (per curiam). In performing this jurisdictional analysis, courts look to the "plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists." *Holland*, 221 S.W.3d at 642. "If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead." *Id.* at 643. However, if "the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Miranda*, 133 S.W.3d at 227.

## DISCUSSION

*Declaratory and Injunctive Relief*

On appeal, the Commissioner challenges the district court's denial on his plea to the jurisdiction by asserting that the district court did not have jurisdiction to consider the declaratory claims pursued by the Applicants or to grant the injunctive relief that they sought.

As a preliminary matter, we note that the legislature has mandated that the Commission "operates" the Program, Tex. Hum. Res. Code Ann. § 33.0006 (West Supp. 2012); *see also id.* § 33.0005 (West Supp. 2012) (clarifying that although statutory provisions use word "Department," Commission governs the Program), and "is responsible for the distribution of commodities and food stamps allocated . . . by the federal government," *id.* § 33.002(a) (West Supp. 2012). Further, the legislature has directly empowered the Commission with the authority to "enter into agreements with federal agencies" and with "agencies and recipients of the commodities and food stamps," *id.* § 33.002(b) (West Supp. 2012), to "establish policies and rules" governing the "distribution of the commodities and food stamps," *id.* § 33.002(c) (West Supp. 2012). In addition, the legislature has bestowed upon the Commission the responsibility of continually monitoring "the expedited issuance of food stamp benefits to ensure that each region in the state complies with federal regulations," *id.* § 33.002(d) (West 2001), of developing "general informational materials that contain eligibility guidelines," *id.* § 33.0021(a) (West 2001), of establishing "toll-free telephone hotlines to provide emergency food information" and "refer needy individuals to local programs" for assistance, *id.* § 33.013 (West Supp. 2012), of engaging in steps to detect and prevent fraud in the Program, *id.* § 33.0023 (West 2001), of establishing "distribution districts and employ[ing] distributing agents," *id.* § 33.003 (West 2001), of developing and implementing "a uniform procedure for verifying information required of an applicant," *id.* § 33.023 (West 2001), and of developing and implementing "a plan of operation to provide nutrition education and outreach to persons eligible for food stamps," *id.* § 33.025 (West 2001).

10

Moreover, the rules promulgated by the Commission governing the implementation of the Program provide a mechanism for individuals to challenge the Commissioner's determination regarding benefits and the Commissioner's failure to timely act. *See* 1 Tex. Admin. Code §§ 372.1002 (explaining that individuals may appeal Commissioner's decision under fair-hearing rules), 357.3(b) (stating that clients of the Program are entitled to fair hearing to appeal "an action to reduce, suspend, terminate, or deny benefits or eligibility," "a failure to act with reasonable promptness on a client's claim for benefits or services," and "the failure to reach a service authorization within the time specified by federal law"), 357.19(e) (authorizing administrative review of decision from fair hearing), 357.703 (explaining procedures governing administrative review and stating that if decision after administrative review is adverse to appellant, "judicial review may be obtained by filing" petition "with a district court in Travis County").[4]

In light of this pervasive regulatory scheme, we must conclude that the legislature intended for the Commission to have exclusive jurisdiction to make an initial determination in a

---

[4] In his appellate brief, the Commissioner presents several jurisdictional arguments that were not contained in his plea nor presented to the district court. For example, the Commissioner contends that the Secretary of the United States Department of Agriculture has exclusive jurisdiction over the type of policy questions at issue in this case, that the issues presented in this case constitute nonjusticiable political questions, that the exclusive remedy for the alleged violations in this case provided by the governing framework is a fair-hearing proceeding before the Commission, and that the Applicants do not have standing to maintain this suit. The Commissioner also insists that although individuals seeking benefits may challenge determinations by the Commissioner through an administrative review process, state courts have no jurisdiction to consider the types of claims presented by the Applicants and instead urges that the federal government has jurisdiction over those types of claims. Given our ultimate determination that the Applicants' petition did not allege that the plaintiffs exhausted their administrative remedies and, therefore, could not have invoked the jurisdiction of the district court to consider their claims, we need not address these arguments or determine whether disputes regarding the Program are precluded from review by state courts.

11

dispute regarding the Program. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002); *see also id.* at 222 (explaining that determining whether agency has exclusive jurisdiction is question of law). When an agency has exclusive jurisdiction to resolve a dispute, parties "must first exhaust administrative remedies before a trial court has subject matter jurisdiction" to consider a dispute. *In re Southwestern Bell Tel. Co., L.P.*, 235 S.W.3d 619, 625 (Tex. 2007); *cf.* Tex. Gov't Code Ann. § 2001.171 (West 2008) (empowering person who has exhausted his administrative remedies and who is aggrieved by final agency decision to seek judicial review).

For the reasons that follow, we must conclude that the Applicants' petition fails to show that the exhaustion requirement had been satisfied for any of the plaintiffs listed in this case. In their petition, the Applicants did not allege that any of the organizational plaintiffs had members who had exhausted their administrative remedies prior to this suit being filed in district court. Moreover, in the portion of their petition generally challenging actions by the Commissioner, the Applicants did allege that some of the plaintiffs named in the case appealed determinations by the Commissioner, but the Applicants did not allege in that portion that any of the plaintiffs had exhausted their administrative remedies by the time this suit was filed.

Regarding factual allegations for the five named plaintiffs for whom the Applicants provided background stories, there was no assertion that their administrative remedies had been exhausted. When discussing Keithley, the Applicants alleged that he appealed the Commissioner's denial but did not provide any information regarding the status of the appeal and related only that Keithley had not received benefits by the time that this lawsuit was filed. Similarly, the Applicants discussed how Lara appealed the denial of her first application for benefits but also stated that the

12

appeal was pending at the time this lawsuit was filed. Regarding S.J.M., the Applicants did not allege that she appealed any determination or action by the Commissioner.

In their petition, the Applicants did allege that Bloom and Chacon appealed the denials of their applications for benefits prior to the filing of this lawsuit. Specifically, the Applicants contended that both Bloom and Chacon sought administrative review after their first applications were denied and were ultimately awarded the benefits that they requested. However, the petition does not reveal the extent to which the Bloom or Chacon appeals progressed. More to the point, the allegations reveal that both Bloom and Chacon were successful in their appellate endeavors and were, therefore, entitled to no further review for those claims. *Cf.* 1 Tex. Admin. Code § 357.703 (allowing for judicial review of decision "adverse to the appellant"). Although the Applicants further contended that Bloom appealed the denial of her application for recertification of her benefits, they also revealed that the appeal was pending at the time that this lawsuit was filed. Similarly, the Applicants urged that after Chacon successfully appealed the denial of her benefits, the Commissioner did not send a written notice about her benefits, but they did not allege that Chacon had sought further administrative review after receiving her benefits.

In support of the district court's order, the Applicants contend on appeal that they are permitted to pursue their suit as an exception to the general prohibition of suits against government officials in their official capacities provided by the doctrine of sovereign immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009) (explaining that with one exception, "governmental immunity protects government officers sued in their official capacities to the extent that it protects their employers"); *Appraisal Review Bd. of Harris Cnty. v. O'Connor & Assocs.*, 267 S.W.3d 413,

419 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (outlining exception to exhaustion requirement). Specifically, the Applicants urge that they may pursue their declaratory claims and suit for injunctive relief because their suit alleges that the Commissioner is acting ultra vires by failing to comply with the statutes and rules governing the Program. *See Heinrich*, 284 S.W.3d at 372-73 (explaining that suits filed against government officials seeking "to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity"); *O'Connor & Assocs.*, 267 S.W.3d at 418-19 (stating that generally courts may only interfere with duties of agency when officials exceed statutorily conferred powers even though administrative remedies have not been exhausted).

We believe that the Applicants read the exception too broadly. Allegations that an agency official failed to fully comply "with all of the intricacies" of a governing regulatory framework cannot serve to confer jurisdiction; rather, a plaintiff must allege that the official "acted wholly outside [his] jurisdiction." *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 528 (Tex. App.—Austin 2002, pet. denied); *see O'Connor & Assocs.*, 267 S.W.3d at 419. The governing laws and rules authorize the Commissioner to make eligibility determinations, to provide assistance to individuals filing for benefits, to issue benefits, and to continue providing benefits to individuals pending a recertification determination. *See* 1 Tex. Admin. Code § 372.904(b) (2012) (explaining that Commissioner will certify or deny applications); *id.* § 372.3(e) (adopting federal regulations pertaining to Program); 7 C.F.R. § 273.2(b), (c) (2012) (stating that agency implementing Program must develop application for benefits and develop notice informing applicants of verification requirements, including documents that may be needed); *id.* § 273.10(g)(1)

14

(2012) (detailing that Commissioner must inform applicants of status of their applications, of basis for denial, and of any additional acts that they need to perform to complete applications); *id.* § 273.14(b) (2012) (requiring Commissioner to provide notice when individual's eligibility will expire); *id.* § 273.2(f) (2012) (stating that agency "shall assist" people "in obtaining sufficient verification"); *id.* § 273.14(e) (2012) (requiring Commissioner to provide benefits when recertification process cannot be completed in timely manner).

Although the Applicants challenge the manner in which the Commissioner performs his duties and the timeliness of his actions, the complaints do not involve actions outside of the Commissioner's authority. Accordingly, allegations that the Commissioner is not fully complying with the regulatory requirements when performing these authorized duties are insufficient to invoke the ultra-vires exception. *See O'Connor & Assocs.*, 267 S.W.3d at 419 (relating that argument that agency hearings were being conducted in manner that did not fully comply with statutory procedural requirements were not enough to invoke ultra-vires exception); *Friends of Canyon Lake, Inc.*, 96 S.W.3d at 528 (concluding that allegations that agency failed to provide required notice and information as part of application process were insufficient to invoke exception); *cf. Texas Comm'n of Licensing & Regulation v. Model Search Am., Inc.*, 953 S.W.2d 289, 292 (Tex. App.—Austin 1997, no writ) (explaining that claim that agency had authority to interpret statute but had interpreted provision incorrectly was insufficient to invoke ultra-vires exception because fact that it might interpret provision incorrectly does not destroy its ability to make that determination).

In addition, although we need not fully decide the issue here given our ultimate holding, we note that it is not entirely clear from the Applicants' petition that a declaratory-judgment

15

action is appropriate in these circumstances. Under the declaratory judgment act, "[a] person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2008). Moreover, a declaratory-judgment action is "an additional remedy and does not supplant any existing remedy, but is intended as a speedy and effective remedy for the determination of the rights of the parties when a real controversy has arisen," *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713 (Tex. 1945), and "is appropriate when a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought," *Texas Health Care v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied). "A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interests and not merely a theoretical dispute." *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.). In other words, declaratory-judgment actions may not be used to obtain advisory opinions. *Transportation Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 227 (Tex. App.—Dallas 2012, no pet.).

When seeking relief, the Applicants sought several declarations. For instance, the Applicants sought a declaration that the Commissioner "is not making eligibility decisions for initial applicants and for recertifications within the time period provided under state law"; that the Commissioner's "on-line and print applications do not comply with state law"; that the portions of the Commissioner's on-line and print applications "regarding the documents required to submit . . . [an] application do not comply with state law"; that the Commissioner's failure to deliver notices

16

of decisions to applicants," failure to inform applicants regarding the basis for denials and of their right to appeal denials, and failure to disclose when an application is being held as pending "do not comply with state law"; that the Commissioner's failure to help applicants locate verification documents violates "state law"; that the Commissioner is not providing benefits within the time "required by state law"; and that the Commissioner's failure to continue providing benefits to applicants while considering whether to recertify them is not "in compliance with state law."

Although the declarations relating to the timeliness of the Commissioner's actions as well as the need for various notices do bear upon several of the Applicants' complaints, many of the other declarations do not seem directly tied to any complaint that any of the Applicants had. In any event, all of the requested declarations are written broadly and seemingly without reference to any specific and concrete disputes. Moreover, the declarations seek global directives regarding the policies and procedures used by the Commissioner. Stated differently, it is not entirely clear from the Applicants' pleadings whether any of the requested declarations would actually resolve any real and substantial controversy between the Applicants and the Commissioner. This seems particularly true for those individuals who appealed determinations by the Commissioner and obtained the relief that they requested. Accordingly, we question whether the justiciable-controversy requirements have been satisfied and note that the requested declarations seem perilously close to improper requests for advisory opinions compelling action on behalf of the Commissioner.

In light of our determination that the Applicants' petition failed to demonstrate that the plaintiffs exhausted their administrative remedies and that the Applicants' allegations did not invoke the ultra-vires exception to the doctrine of sovereign immunity and to the exhaustion

17

requirement, we must conclude that the petition failed to invoke the jurisdiction of the district court to consider the Applicants' request for declaratory relief and for temporary and permanent injunctive relief. For these reasons, we sustain the Commissioner's challenge to the district court's ruling on his plea to the jurisdiction.

*Mandamus Relief*

In their petition, the Applicants sought mandamus relief as well as temporary and permanent injunctive relief. In his plea to the jurisdiction, the Commissioner asserted that the Applicants had no right to mandamus relief. However, on appeal, the Commissioner has limited his challenge to the district court's denial of his plea as it related to the Applicants' declaratory claims and requested injunctive relief and specifically concedes that he does not challenge the district court's jurisdiction "over the mandamus petition." *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a) (West Supp. 2012) (listing types of orders that may form basis for interlocutory appeal including grant or denial of plea to jurisdiction). Further, the Commissioner asserts that in the event that we reverse the district court's ruling, we should remand the case "for disposition of the pending petition for writ of mandamus." Accordingly, in this appeal, we do not address the propriety of the Applicants seeking the requested relief through a writ of mandamus.

**CONCLUSION**

Having determined that the Applicants' petition did not invoke the jurisdiction of the district court regarding the Applicants' declaratory claims and their request for temporary and permanent injunctive relief, we reverse the district court's denial of the Commissioner's plea to the

18

jurisdiction as it related to those claims. Further, we note that it appears from the Applicants' pleadings that this jurisdictional defect could not be cured for many of the Applicants; however, the pleadings do not affirmatively negate the possibility that some of the Applicants might be able to present claims that invoke the jurisdiction of the district court. For that reason and because the exhaustion argument was considered for the first time on appeal, we remand for further proceedings consistent with this opinion. *See Black*, 2012 Tex. LEXIS 731, at \*17-19 (warning of potential inequity of not allowing plaintiffs to amend pleadings to respond to jurisdictional issue raised for first time in interlocutory appeal and explaining that appellate courts should remand for further proceedings if pleadings "neither demonstrate jurisdiction nor conclusively negate it"). Moreover, consistent with the Commissioner's request, we also remand the case for consideration of the Applicants' request for mandamus relief.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Reversed and Remanded

Filed:   April 17, 2013

19